## Case No. 2,947.

### COFFEEN v. BRUNTON.

[5 McLean, 256; Cox, Am. Trade-Mark Cas. 132; Cox, Manual Trade-Mark Cas. 60.] [1]

Circuit Court, D. Indiana. May Term, 1851.

INFRINGEMENT OF TRADE-MARK—INJUNCTION.

1. A party is not entitled to an injunction to protect him against another person who has assumed the same label, as to a medicine or drug claimed to have been invented by the complainant, unless his right is clear.

2. If they were concerned in getting up the medicine, both contributing to the compound as a partnership action, neither can claim the exclusive right.

3. In such a case the court will leave the parties to their legal remedies.

4. Injunction should only be granted where the right is clear, and where, from its nature, a remedy at law would be inadequate.

[Bill to enjoin infringement of a trademark. Complainant obtained a preliminary injunction (Case No. 2,946), which was apparently subsequently dissolved, and a motion is now made for a rehearing.]

Smith & Yandes, for complainant.
Mr. Test, for defendant.

OPINION OF THE COURT. This bill was brought by the complainant to enjoin the defendant from using a label, or any other representation which would mislead the public in purchasing his liniment, for that which is manufactured and sold by the complainant. The charge in the bill is, that the label of the defendant is so assimilated to the plaintiff's as to lead to this imposition by which the defendant is greatly benefited, and the plaintiff injured. That the complainant, at great expense, has established his business, and that his medicine, called the "Chinese Liniment," is in great demand as an efficacious remedy in many cases of disease and injuries; and that the defendant is enabled to sell his liniment by assuming the false fact, that it is the same as the plaintiff's.

The defendant, in his defense, sets up, that John Loree, of whom he purchased, is the inventor of the "Chinese Liniment," having furnished the complainant with a recipe for making the same, except two ingredients which were added on their mutual consultation. That the complainant agreed to take the said Loree as a partner into the business, so soon as he could advance capital;

---

[1] [Reported by Hon. John McLean, Circuit Justice. Cox, Manual Trade-Mark Cas. 60, contains only a partial report.]

until which time he was constituted the general agent of the complainant to sell the medicine, and was so designated in his handbills. But when he had procured the necessary capital, the complainant refused to take him as a partner. That Loree then made his liniment, called the "Ohio Liniment," which contains the same ingredients of which the complainant's liniment is composed, with the addition of two or three others, which make it more valuable.

A great number of depositions were taken on both sides, which show, on the part of the complainant, that in the early part of the year 1846 he went to Cincinnati, and remained there several weeks, to make what he called the "Chinese Liniment." He selected several of the ingredients from the store of Mr. Burdsell, a very respectable druggist, and concocted the liniment, and gave it the name of the "Chinese Liniment," procured vials, had labels and handbills printed, and thus prepared the article for sale. Neither Mr. Burdsell nor any other witness has stated of what ingredients this liniment is composed. The witnesses state they do not know of what the compound is made, but all of them agree in saying that it is a valuable medicine; and they give the same character to the liniment of the defendant.

The following letter, written by the complainant, is relied on, as sustaining the answer: "Blue Ball, Aug. 9th, 1845. Dr. John:—We had expected to have heard from you before this time. I got home in two weeks after I left your house. I made myself some acquainted with the prospect of selling the liniment we have been talking of. It appears to me the prospect is first rate, if the thing is properly managed. I divided the little I took with me among more than a dozen persons, who say they look with great anxiety for the thing to come out. If I had the receipt, I would take pains to ascertain what would be the cost of preparing it in quantity. Mr. Freeman says he would like, when he goes east, to bring any stock that we may want, which would make it come cheaper than to procure the stock in this country. I feel fully confident that a nice business may be done. The country is as ripe now as ever it was for a thing that is new. If you will send me the receipt, I will go to Cincinnati and ascertain, as near as I can, what will be the whole cost, including the necessary handbills, to accompany the articles; and also the expense of the vials; they ought to be done up in the neatest manner. It seems to me that they would look well of a square form, about four inches long, and holding three oz. By going to the glass factory any form can be obtained. When you send the receipt write out the names of the articles very plain, so as to avoid any mistake; as the whole list will not be shown to any apothecary. I think we ought to have always a supply of the article on hand. I have no doubt if I had a supply when I

went to Kentucky, I could have sold twenty or thirty dollars worth." This letter was dated in August, 1845, and it appears, from the evidence, that the recipe was forwarded to the complainant by one of his daughters, in August, 1845, some months before he went to Cincinnati to prepare the medicine. And in regard to a small amount of the medicine referred to in the above letter, it is in proof that in June, 1845, Loree brought in to the house of the complainant, a jug full, as he said, of the ingredients of which the liniment was made; and the daughter of the complainant assisted him in making the liniment. A part of this, probably, was taken by him to Kentucky. On the 28th of February, 1846, the complainant writes to the defendant from Cincinnati, that "every thing seems to be going as favorably as we can desire. There is one universal burst of praise in favor of the liniment," &c. "I have as favorable and flattering expressions from gentlemen of the highest respectability as I could desire, and shall append them to the bills I am now getting printed, of which I will send you some as soon as they are done," &c. "Our great object must be to move the thing, and give it notoriety. One hundred thousand bottles, I have no doubt, could be sold in the United States, if they were only in the market, in a year."

From these letters and other evidence in the case, it satisfactorily appears, that the defendant was engaged with the complainant in making this medicine. The recipe spoken of by Loree, obtained from a Doctor Diffendaffer, with whom it is alleged he studied medicine, named many of the materials out of which, in all probability, the compound was made. Two or three other ingredients, the defendant admits, were added to those named in the recipe; and, it is probable, though there is no positive evidence on the subject, that the complainant, at Cincinnati, when compounding the ingredients, may have added some others, and that this is the ground on which he declares the defendant is ignorant of the ingredients which compose the "Chinese Liniment." However this may be, I cannot doubt that the defendant was at first actually concerned in getting up and bringing out the medicine, and that a partnership between the parties was contemplated. Some time after the defendant had commenced his general agency in selling the medicine, the parties quarrelled, and afterwards had a compromise, in which, from some of the witnesses, the defendant seems to have relinquished his interest. But that compromise does not appear to have been carried out, and the defendant asserted his right, and prepared the "Ohio Liniment," and through his agents, handbills, &c., distributed it through the country. These facts are referred to, to show that in a case like the present, where rights are contested between the parties, chancery will not interfere and enjoin a party from using labels, or

marks, to recommend his article, though it may, to some extent, be substituted for that of the plaintiff's. The matter, of right, must first be determined by an action at law or otherwise, and this is not the object of the present bill. Both medicines are highly recommended by those who have used them, and several of the witnesses think they are composed of the same ingredients. If the "Ohio Liniment" is the same as that of the plaintiff's, he having no exclusive right to it, is not injured by the representations of the defendant.

To entitle a complainant to protection against a false representation, it is not essential that the article should be inferior in quality, or that the individual should fraudulently represent it, so as to impose upon the public; but, if by representation, it be so assimilated, as to be taken in the market for an established manufacture, or compound of another, the injured person is entitled to an injunction. The injury is not the less, though the false representations are made without a knowledge of such interference. False marks or brands are generally fraudulently assumed. As where, in the manufacture of cotton cloth, a mark is assumed intentionally, of a manufacturer whose products stand high in the market, it will be considered as fraudulent. No one can interfere with another's business, injuriously, for his own benefit, with impunity. This is an important commercial principle, of extensive application. And, as in such cases, the damages cannot be ascertained at law, relief will be given by injunction. But where, as in the present instance, there is a controversy between the parties, whether both were not concerned in the establishment of the business, it is not a case for an injunction. The bill is not framed with the view of adjusting such a controversy. The right of the plaintiff who claims protection in this form, must be clear. If it be controverted, chancery will leave the parties to their remedy at law; or at least, to such a proceeding as shall present the whole merits of the controversy, and enable the court to decide it. I concur in the opinion of my brother judge, that the application for a rehearing must be overruled.