SMITH vs. THE STATE.

It was not the intention of the Legislature, by the 8th section of the act of the 15th December, 1852, nor within their constitutional power, to authorize the Cincinnati and Little Rock Slate Company to issue bills to be used as a circulating medium: and the issuance of such bills would be a violation of the charter for which the franchises of the corporation might be seized.

Upon a writ of *quo warranto* against a mere officer or servant of a corporation, there can be no judgment of seizure for an abuse of the charter—the proceeding should be against the corporation.

*Appeal from Pulaski Circuit Court.*

Hon. JOHN J. CLENDENIN, Circuit Judge.

WATKINS & GALLAGHER, for the appellant.

The defendants were the private officers or servants of the Cincinnati and Little Rock Slate Company, and are not charged as claiming or exercising any public office or authority, and

therefore, this proceeding does not lie against them. 6 *East*.
356; *Com. vs. Dearborn, et al.* 15 Mass. 125.

HEMPSTEAD, Solicitor General, contra.

Mr. Chief Justice ENGLISH delivered the opinion of the court.

This was a writ of *quo warranto* issued by the clerk of the
Pulaski Circuit Court, on the motion of the attorney for the
State, whereby the sheriff was commanded to summon *W. R.
Smith* and *George C. Jones*, to appear etc., and show by what
warrant they exercised the right to issue and put into circula-
tion, bills or notes of the *Cincinnati and Little Rock Slate Com-
pany*, and the powers and privileges of banking; it being alleged
that they had located a banking institution in the State, known
and called by the name and style of " the Cincinnati and Little
Rock Slate Company," and had opened a banking office in the
city of Little Rock, and kept regular banking hours, for the
purpose of issuing and circulating their bills, and had issued
and put into circulation a large quantity of said bills.

The writ was returned served on *Smith*, and not found as to
*Jones*.

Smith filed a response to the writ, stating that he did not
claim or exercise the right or privilege of banking, or of issu-
ing and putting into circulation bills or notes of said company,
for such purpose as alleged, etc. But at the time of the issu-
ance and service of the writ, he was the mere officer and ser-
vant of said company, being the cashier thereof, and in no wise
assuming or claiming in his individual capacity, or by reason
of any association with said *Jones*, to use or exercise any corpo-
rate powers or functions whatever.

Respondent, protesting that the remedy, if any, sought to be
obtained by the writ, had been misconceived, and should have
been sought against the company, and that he was not bound
by law to answer the same, other than as above, nevertheless
proceeds to state, that at the time of the issuance and service
of the writ, he was, and still continued to be, the cashier of the

*Cincinnati and Little Rock Slate Company*, a corporation of the State, created by an act entitled " An act to grant a charter to the Cincinnati and Little Rock Slate Company," approved the 15th December, 1852, which was a public act, etc. That he was appointed such cashier by the president and directors of the company, pursuant to the provisions of the charter, etc., and in that capacity had been in the service and employment of the corporation at Little Rock, and engaged in the discharge of such duties as usually and properly appertain to said office of cashier.

That in and by said act, and for the purpose, as declared in its preamble, of developing the resources of the State, and of encouraging capitalists, etc., to take the necessary steps for the development of such resources, it was, amongst other things, enacted, that for the purpose of facilitating the operations of said company, they should have power to draw and sell drafts or bills of exchange, in such sums and amounts as they might think proper, on the different cities to which they might ship their merchandize.

That in order to facilitate the operations of said company, and in the transactions of its business, said president and directors have caused to be drawn, sold and issued divers drafts or bills of exchange, in such sums or amounts as they thought proper, and all of the same form or tenor, (a copy of one of which bills for five dollars is exhibited.)

That all such drafts and bills of exchange were sold and issued for value received, in the business transactions of the company, and that they were payable at the office of the treasurer and agent of said company, in the city of New York, where all such of them as had been presented for payment had been paid, taken up and cancelled, and never afterwards re-issued.

That if such drafts or bills of exchange, from the time of the sale and issuance of them by said company, and before the presentation of them for payment to the said treasurer of the company in New York, had been circulated and passed by

delivery, and so, being used as a medium of exchange, fulfilled in that mode the office of currency in business transactions, it was a legitimate and beneficial operation, such as may and does result from the use of ordinary bills of exchange, when issued by any private individual or corporation, as a medium of exchange, and without contravening any law, etc. That the company had not, as far as respondent knew, drawn, sold, or put into circulation, as currency, any notes thereof, and had not had drawn, sold or issued any drafts or bills of exchange, except of the form and tenor, and in the manner above stated.

The court sustained a demurrer to the response, and rendered judgment—" that the right, privilege and franchise of issuing and putting into circulation said bills or notes of the Cincinnati and Little Rock Slate Company, by the said *respondents*, be seized into the hands of the State, as being exercised and issued by the said defendants, without any sufficient warrant or authority, and in violation of the laws of Arkansas, and that the said State do have and recover from respondents all the costs in and about this prosecution expended."

The defendants appealed.

The 8th section of the charter of the Cincinnati and Little Rock Slate company provides; " that for the purpose of facilitating the operations of said company, they shall have power to draw and sell drafts or bills of exchange, in such sums or amounts as they think proper, on the different cities to which they may *ship their merchandize*."

It was not the intention of the Legislature, by this section of the charter, to confer any banking privileges upon the company, or to authorize them to issue bills, to be used as a circulating medium; and if such had been the intention of the Legislature, they had not the constitutional power to confer such privileges upon the company. *Amend. to Const. of Nov.* 1846.

If the company claimed and exercised the privilege of banking, or attempted to convert their bills into a circulating medium,

19

as they perhaps did, notwithstanding the plausible response of *Smith*, it was an abuse of the charter—a misuser—for which, upon a writ of *quo warranto* issued against the corporation, the franchise granted to the corporators, by the charter, might be seized by the State. *The People vs. Utica Ins. Co.*, 15 *John R.* 389.

But upon *quo warranto* against a mère officer or servant of the corporation, there could be no judgment of seizure for an abuse of the charter. *Commonwealth vs. Dearborn et al.* 15 *Mass.* 125; *King vs. Cor. of Bedf.* 6 *East*, 356; *Queen vs. Taylor*, 11 *Ad. & El.* 949. Though, under our statute, in a proceeding against the corporation, the writ may be served upon an officer of the company, the action and judgment are against the corporation. *Dig. Ch.* 39.

The judgment must be reversed, and the cause remanded.