THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED
WORKMEN OF IOWA v. W. R. GRAHAM, *et al.*,
Appellants.

**Statute of Limitations.** An insurance society was organized before the
Code required certificates of incorporation. *Held,* delay in pro-
curing a certificate of the right to incorporate will not enlarge
the time for bringing action by it to establish in it the right to the
exclusive use of the corporate name.

SAME. Litigation as to the right to offices in an association will not
suspend the running of the statute as to an action by one rival
body against the other to establish the exclusive use to a name.

**Laches:** ESTOPPEL. After an insurance organization has been
allowed to proceed in its business with full knowledge and
acquiescence of the insurance authorities of the state for a series of
years during which many of its members have by age and debility
become unable to procure any other insurance, a rival organiza-
tion which has all the time had knowledge of the facts and failed
to take action is estopped from contesting the legality of such
business.

**Corporation.** The right to use the name "Grand Lodge of the Ancient
Order of United Workmen of Iowa" cannot be claimed by a
seceding body merely because it has become incorporated to the
exclusion of the body from which it seceded, which original body
previously had used the name and continued to do so without
incorporation.

SAME. The certificate of the auditor as to the right of a corporation to
a name is not binding upon another body claiming the right to
the name.

SAME. The right of a corporation to the exclusive use of a name as
against another organization using the same name does not fol-
low from the fact that the latter is doing an unlawful business.

Kinne, J., took no part.

*Appeal from Dubuque District Court.*—HON. J. L.
HUSTED, Judge.

WEDNESDAY, JANUARY 22, 1896.

This is a suit in equity to enjoin the defendants, who are officers of an alleged unincorporated society or voluntary association, from using the name of the "Grand Lodge of the Ancient Order of United Workmen of Iowa," usually written and known as the "G. L. A. O. U. W. of Iowa;" to restrain them from transacting business, and from conducting a life insurance business upon the mutual assessment plan under that name; and for such other relief as may be equitable. The defendants demurred to the petition, and the demurrer was sustained. Thereupon the petition was amended, and a demurrer to the petition as amended was overruled. Thereafter defendants filed an answer to the petition, containing three counts and twenty-five divisions or paragraphs, and afterwards filed an amendment consisting of two divisions. Plaintiff moved to strike out certain parts of the answer as amended, and demurred to the remainder. The motion and demurrer were sustained, and defendants electing to stand on their pleadings, a decree was rendered against them as prayed. Defendants appeal.— *Reversed.*

*C. C. & C. L. Nourse, W. H. Berry, Alphonse Matthews,* and *J. W. Warrington* for appellants:

As to the rights of third parties the certificate of the auditor could have no effect.

Where no appeal or writ of error lies from the determination of such tribunal or officer, the judgment is not conclusive upon third persons, and the same may be shown to be illegal or fraudulent whenever brought in question.

*Bixby v. Adams County,* 49 Iowa, 507; *Vose v. Morton,* 4 Cush. 31, 50 Am. Dec. 750; *Leonard v. Bryant,* 11 Met. 370; *Griswold v. Stewart,* 4 Cow. 458; *Kaiser v. Lawrence Sav. Bank,* 56 Iowa, 104, 41 Am.

Rep. 85; *Re National Indemnity Endowment Co.*, 142 Pa. 450.

Plaintiff's right to maintain this suit must be made to depend upon its exclusive right to the name, for otherwise the plaintiff has no more right to be heard in this court than any other insurance company whose business may be incidentally affected by the operations of the defendant organization.

Beach, Inj. section 13; *McDonald v. English*, 85 Ill. 232; *Springer v. Walters*, 139 Ill. 419; *Slatten v. Des Moines Valley R. Co.*, 29 Iowa, 148, 4 Am. Rep. 205.

To entitle the plaintiff to this protection it must affirmatively appear: (1) that plaintiff originated the name, or (2) acquired the exclusive right to the use of the name from some one who might legally transfer such a right; and (3) that the name was such that a special property might be acquired in it by appropriation or purchase.

*Ottoman Cahvey Co. v. Dane*, 95 Ill. 205; *Corbin v. Gould*, 133 U. S. 308, 33 L. ed. 611; *Van Beil v. Prescott*, 82 N. Y. 630; *Amoskeag Mfg. Co. v. Spear*, 2 Sandf. 599; *Delaware & H. Canal Co. v. Clark*, 80 U. S. 13 Wall. 311, 20 L. ed. 581; *Fish Bros. Wagon Co. v. La Belle Wagon Works*, 82 Wis. 56, 16 L. R. A. 453; *Black Rabbit Asso. v. Munday*, 21 Abb. N. C. 99; *Nebraska Loan & T. Co. v. Nine*, 27 Neb. 507; *Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co.*, 128 U. S. 598, 32 L. ed. 535; *Koehler v. Sanders*, 122 N. Y. 65, 9 L. R. A. 576; *Leclanche Battery Co. v. Western Electric Co.*, 23 Fed. Rep. 276.

The name "Iowa" being a geographical name is common property, and cannot be appropriated to trade or business by any one to the exclusion of others.

*Columbia Mill Co. v. Alcorn*, 150 U. S. 460, 37 L. ed. 1144; *Nebraska Loan & T. Co. v. Nine, supra*.

There never was any transfer by the supreme lodge of the order to the plaintiff in the nature of a

contract by which plaintiff can claim an exclusive right to the use of the name "Ancient Order of United Workmen."

The sale or transfer of the good will of a business does not entitle the assignee to the exclusive use of the name.

*Iowa Seed Co. v. Dorr*, 70 Iowa, 482, 59 Am. Rep. 446; *Vonderbank v. Schmidt*, 44 La. Ann. 264, 15 L. R. A. 462.

Our legislature has recognized the fact that such fraternal and benevolent associations are not insurance companies, and can with safety and greater benefit to the public continue their fraternal and benevolent work without the supervision of the state.

*Dickinson v. Ancient Order of U. W.*, 159 Pa. 263; *Com. v. Equitable Ben. Asso.*, 137 Pa. 419; *Gorman v. O'Connor*, 155 Pa. 239; *Northwestern Masonic Aid Asso. v. Jones*, 154 Pa. 104; *Johnson v. Philadelphia & R. R. Co.*, 163 Pa. 133; *State v. Taylor*, 56 N. J. L. 49.

Plaintiff cannot, as against the statute of limitations, indefinitely prolong the time in which he may sue by voluntarily failing to do the things required by law to be done before an action may be brought.

*Hintrager v. Traut*, 69 Iowa, 746; *Baker v. Johnson County*, 33 Iowa, 151; *Kirby v. Lake Shore & M. S. R. Co.*, 120 U. S. 131, 30 L. ed. 569; *Palmer v. Palmer*, 36 Mich. 487, 24 Am. Rep. 605.

Even in law actions for damages on account of a continuing nuisance, this court has held that when the act of the defendant was complete before the period of limitation, and the result only was within the statute, even a suit for damages was barred.

*Powers v. Council Bluffs*, 45 Iowa, 652, 24 Am. Rep. 792; *Baldwin v. Oskaloosa Gas Light Co.*, 57 Iowa, 51; *Williams v. Mills County*, 71 Iowa, 367.

Reasonable diligence must be used in making application for relief against piracy of a trade-mark.

and proceedings should be instituted promptly upon the discovery of the fact.

High, Inj. section 1100; *Estes v. Worthington*, 22 Fed. Rep. 822; *Galliher v. Cadwell*, 145 U. S. 369, 36 L. ed. 738; *Harwood v. Chicago & C. Air Line R. Co.*, 84 U. S. 17 Wall. 78, 21 L. ed. 558; *Twin-Lick Oil Co. v. Marbury*, 91 U. S. 587, 23 L. ed. 328; *Brown v. Buena Vista County*, 95 U. S. 157, 24 L. ed. 422; *Hayward v. Eliot Nat. Bank*, 96 U. S. 611, 24 L. ed. 856; *Holgate v. Eaton*, 116 U. S. 33, 29 L. ed. 538; *Davison v. Davis*, 125 U. S. 90, 31 L. ed. 635; *Societe Fonceire et Agricole v. Milliken*, 135 U. S. 304, 34 L. ed. 208.

Plaintiff claims that it has been organized only under the statute for the organization of charitable institutions, and yet it is here complaining to a court of equity, that another organization is doing a charitable work. Such a proceeding as this is certainly an anomaly, and finds a precedent only in the ancient case reported by St. Luke, in which one of the apostles complained to the Master that he had found certain persons performing miracles and doing good in His name, and that he forbade them.

Luke ix., 49. See, also, *Coffeen v. Brunton*, 5 McLean, 256; *Filley v. Child*, 16 Blatchf. 376.

*Longueville & McCarthy* and *Lyon & Lenehan* for appellee:

When plaintiff was incorporated it obtained from the state of Iowa its franchises, the first and most important of which is its name.

The name of a corporation is a part of its franchise and therefore property, and will be protected in equity no matter what its objects or purposes are, as long as they are legal.

Waterman, Corp. section 31, High, Inj. section 1081; *Newby v. Oregon Cent. R. Co.*, 1 Deady, 609;

*Paulino v. Portuguese Ben. Asso.*, 18 R. I.——, 20 L. R.
A. 272; *Holmes, B. & H. v. Homes, B. & A. Mfg. Co.*, 37
Conn. 287, 9 Am. Rep. 324; Pom. Eq. Jur., section
1358; *International Trust Co. v. International Loan
& T. Co.*, 153 Mass. 271, 10 L. R. A. 758; *United States
Mercantile Rep. Co. v. United States Reporting & C.
Asso.*, 21 Abb. N. C. 115; *Chas. S. Higgins Co. v. Higgins Soap Co.*, 144 N. Y. 462, 27 L. R. A. 42.

The natural consequences of the wrongful appropriation of a corporate name must be to injure business and rights of the corporation in some degree by destroying or confusing its identity. The act is an illegal one and must be presumed to have been done with an intent to cause results which naturally flow from it.

Waterman, Corp., section 31; *Paulino v. Portuguese Ben. Asso., supra.*

*Holmes, B. & H. v. Holmes, B. & A. Mfg. Co., supra,*
fully discusses the question, and denies the right of persons who allow the use of their names in forming the original corporation to use the same in another corporate name, and puts it on the ground of an estoppel.

A corporation may, by injunction, prevent other persons from using its name to the injury of its trade.

Morawetz, Priv. Corp. section 184.

The case is analogous to, if not stronger than that of piracy upon an established trade-mark.

*Bell v. Locke,* 8 Paige, 75, 34 Am. Dec. 371; *T. jlor v. Carpenter,* 11 Paige, 292, 42 Am. Dec. 114; *Partridge v. Menck,* 2 Barb. Ch. 102, 47 Am. Dec. 281; Williams, Eq. 402, 403.

A corporate name is regarded as a trade-mark, and as such, it is entitled to the protection of a court of equity.

High, Inj. 3d ed., section 1081; *Paulino v. Portuguese Ben. Asso.,* 18 R. I.——, 20 L. R. A. 272.

It is one of the duties of the supreme lodge to organize and establish grand lodges, and there can be but one grand lodge in a state.

Supreme Lodge Const., section 25.

Within this power the supreme lodge chartered the plaintiff in 1873 as the Grand Lodge of the Ancient Order of United Workmen of Iowa. That was the only name that it could have under section 26 of the Constitution of the Supreme Lodge. (Abst. 108.) That was the name given to it, and when it gave that name to plaintiff the supreme lodge had exhausted its power in this respect, and had divested itself of all power to organize any other grand lodge in Iowa, as long, at least, as plaintiff existed.

*District Grand Lodge No. 5, I. O. of B. B. v. Jedidjah Lodge No. 7, I. O. of B. B.,* 65 Md. 236; *Goodman v. Jedidjah Lodge No. 7, I. O. of B. B.,* 67 Md. 117; *State v. Miller,* 66 Iowa, 26; *State v. Nichols,* 78 Iowa, 747.

The unlawful business of the defendants specially injures the plaintiff because the defendants use its names and methods. In fact, they claim to be the plaintiff. If the name used and business transacted are colorable imitation or may cause confusion, injury to the plaintiff will be presumed and an injunction will lie.

*Re United States Mercantile Reporting & C. Agency,* 115 N. Y. 176; *Drummond Tobacco Co. v. Randle,* 114 Ill. 412; *United States Mercantile Rep. Co. v. United States Reporting & C. Co.,* 21 Abb. N. C. 115.

The acts of the defendants are in the nature of a continuing trespass.

Pom. Eq. Jur. 1st ed., section 1358.

The party injured has the right to maintain an action in a case of continuing injury.

Wood, Lim. Act. section 180, notes; *United States Mercantile Rep. Co. v. United States Mercantile & C. Co., supra.*

If the matter in dispute between the parties has, during the time when the delay occurred, been the subject of litigation, the plaintiff's delay is sufficiently excused.

*Pacific R. Co. v. Missouri P. R. Co.,* 111 U. S. 505, 28 L. ed. 498; *Comins v. Culver,* 35 N. J. Eq. 94; *Galloway v. Barr,* 12 Ohio, 354; *Cox v. Montgomery,* 43 Ill. 110; *Cotton v. Wood,* 25 Iowa, 43; *Denham v. Watson,* 24 Neb. 779; *Sanders v. Jacob,* 20 Mo. App. 96.

Mere lapse of time upon the part of the plaintiff after learning of the infringement of its rights will not deprive it of relief in equity.

High, Inj. 3d ed., section 1101.

Deemer, J.—The pleadings in this case are very voluminous, covering more than one hundred and sixty closely printed pages of the abstract. We cannot do more than set out the substance of the allegation which we deem material to a proper determination of the case, and must, of necessity, avoid even a reference to many matters which are pleaded and argued by the counsel, for the reason that they would obscure the real points at issue as we understand them. The plaintiff claims: That it is a mutual benefit association doing a life insurance business in this state under the name in which it brings this suit, under authority from the auditor of state. That it was originally incorporated under its present name in Scott county, in June, 1875; afterwards reincorporated in Blackhawk county in February, 1884, and received its certificate to do business from the auditor of state in July, 1893. That it does business through subordinate lodges organized in different parts of the state, and now consists of two hundred and seventeen lodges,

with a membership of over nine thousand. That the defendants are an unincorporated society, doing the same business as plaintiff, and under the same name, within the state of Iowa, and that it has lodges in different localities, with the same name and numbers as those organized by plaintiff. That it has heretofore been determined by this court, in the cases of *State v. Miller*, 66 Iowa, 26 (23 N. W. Rep. 241), and *Same v. Nichols*, 78 Iowa, 747 (41 N. W. Rep. 4), that plaintiff is the Grand Lodge A. O. U. W. of Iowa, and that defendants are now falsely and fraudulently claiming to be the lawful grand lodge, and entitled to do business as such, and are unlawfully using and doing business under plaintiff's corporate name, in fraud of the rights of plaintiff, and to its great damage and detriment. The defendants, in answer, admitted that plaintiff's predecessors adopted articles of incorporation as alleged, but averred that they were not in accordance with chapter sixty-five of the Acts of the Twenty-first General Assembly. Admitted that plaintiff received a certificate from the auditor of state, authorizing it to do business as a mutual benefit society; but averred that it was wrongfully issued, and that the articles of incorporation were never submitted to the attorney general as required by law. Alleged that the only question determined in the cases referred to by plaintiff was as to the right of certain persons to hold office in the association, and that no other question was adjudicated. Denied that the original corporation organized in Scott county is the same as plaintiff. Defendants averred that they are members of an unincorporated society doing business under the name of the Grand Lodge Ancient Order of United Workmen of Iowa, but denied that they are doing a life insurance business on the mutual assessment plan. Admitted that some of the defendants are officers of this unincorporated society. Admitted that it had subordinate lodges instituted at different places where

plaintiff also had lodges; but averred that its lodges were first instituted, and existed at these places before those organized by plaintiff came into existence. And defendants denied each and every other claim of the plaintiff. Defendants further averred that the fraternal organization known as the "Ancient Order of United Workmen" was organized in the year 1868, in the state of Pennsylvania, under the same plan as the association of which defendants are members, but afterwards, in the year 1870, an organization was perfected in the same state, known as the "Grand Lodge of A. O. U. W. of Pennsylvania," and afterwards, by authority of this grand lodge, subordinate lodges were instituted in Ohio, Kentucky, Iowa, and other states; and afterwards by authority of the grand lodge of Pennsylvania the subordinate lodges in the other states organized grand lodges in their respective states; and afterwards, on February 11, 1873, there was organized at Cincinnati, Ohio, by delegates from the several grand lodges, a supreme lodge, with supreme legislative power in all matters pertaining to the order throughout the United States and Canada; that said supreme lodge was authorized to institute new lodges within the several states, and in pursuance thereof, in the month of November, 1873, did charter and institute a number of lodges, and on the twenty-seventh day of November, 1873, issued a charter authorizing the Grand Lodge of the Ancient Order of United Workmen of Iowa; that said organization was instituted and chartered upon the express condition that it should be subordinate to and recognize the authority of, and abide by the rules and decisions of, the supreme lodge. And defendants further averred that the name "Ancient Order of United Workmen" and the name "Grand Lodge Ancient Order of United Workmen of Iowa" originated and first became known to the public in the manner and by the means above set forth. They

further averred that the Ancient Order of United Workmen was a fraternal organization, having for its objects the union into fraternal brotherhood of male persons over twenty-one and under fifty years of age, regardless of nationality, political preferences, or denominational distinctions; the adoption of such secret work as would enable the members to make themselves known; to enhance and give equal consideration to all classes and kinds of labor; to improve the moral, intellectual, and social condition of its members; to hold lectures, read essays, discuss inventions and improvements, encourage research in art, science, and literature, and to establish and maintain libraries where practicable; to create funds in aid of the sick or disabled members, and to pledge to members the payment of a stipulated sum to such beneficiary as a deceased member may designate; to improve the moral, mental, and social condition of the members, and to create, hold, and manage and disburse a beneficiary fund for the relief of members of said organization and their families under such rules as are prescribed by the Supreme Lodge of the Ancient Order of United Workmen of the United States. Defendants further averred that the fraternal features of the organization are fully carried out by the supreme lodge and by the grand lodge to which defendants belong, and that the payment of stated sums to the families of deceased members is only an incidental feature of the objects of the organization, and that the amount paid is solely by and out of the funds of the grand lodge of the state of Iowa from contributions made by members within its jurisdiction. Defendants further averred that the association with which they are connected is not an association for pecuniary profit; that it declares no dividends, employs no agents, and pays no commission for procuring its business; that only those who are actually employed in clerical work and

in the work of organization of new lodges receive any compensation. The defendants further pleaded that prior to the time of the adoption of the articles of incorporation under and by virtue of which plaintiffs are exercising corporate powers, the persons adopting the same and those co-operating with them had revoked their connection with and subordination to the supreme lodge, and adopted certain resolutions of secession from the supreme lodge, and on account thereof the charter of the grand lodge was declared forfeited by the supreme lodge; and that ever since said time plaintiffs have falsely and without authority pretended to act as members of the Ancient Order of United Workmen and as a grand lodge for the purpose of carrying on life insurance only, and as a corporation for pecuniary profit. Defendants further alleged that a number of lodges in this state at the time of the secession continued to recognize their submission to the supreme lodge, and at the time plaintiffs adopted their articles of incorporation and renounced allegiance to the supreme lodge these aforesaid subordinate lodges recognized their subordination to the supreme lodge, and are still acting under, and still retain the original charters granted them by authority of the supreme lodge; and that at the time plaintiffs organized as an independent organization and renounced their subordination to and connection with the supreme lodge, the charter of the grand lodge was restored to those who recognized the authority of the supreme body; and the grand lodge constituted by delegates duly elected and chosen by those subordinate lodges was recognized by the supreme lodge as the rightful grand lodge of the order in the state of Iowa, and has ever since used and enjoyed the name and title of the "Grand Lodge of the Ancient Order of the United Workmen of Iowa."

In the third count of the answer defendants pleaded that they and their predecessors in office have used the name in controversy for ten years next before the commencement of this suit, to the knowledge and with the acquiescence of plaintiff during the entire time. They also averred that in the month of May, 1882, the organization of which they are members had subordinate lodges in the state, recognizing their allegiance to the supreme lodge, with only about three hundred and twenty members, but that since that time and up to date of the commencement of this suit the number has increased to about nine thousand five hundred members, belonging to one hundred and twelve lodges, loyal to the supreme lodge. That the loyal grand lodge has endeared itself to the people by reason of the integrity and ability of its management, and that plaintiff is now seeking to take advantage of, appropriate, and monopolize the same; that plaintiff failed and neglected to assert any exclusive right to the name until the same became of value; and that it is now estopped, by reason of its laches, from instituting or prosecuting this suit. Defendants further averred that the method of doing business adopted by them has been officially recognized by the attorney general and auditor of state with full knowledge of all facts, and upon the faith of such recognition its members have increased, and thousands of persons have been paying money and contributing to death losses relying upon the loyal grand lodge paying two thousand dollars to their beneficiaries in case of death; and that to now enjoin defendants from meeting their obligations and making assessments would be inequitable, and operate as a hardship and fraud upon these members. They further aver that many persons have become members of their organization during the past ten years who have during this lapse of time arrived at that age, and suffered such disabilities, as

to render it impossible for them to procure benefits for their families in case of death, and many others cannot procure these benefits without large additional expense. In an amendment to the answer the defendants averred that the association to which they belong does not issue any contract of indemnity or insurance in the name of the grand lodge, nor issue any obligation on which an action can be maintained that the fund provided to be paid on the death of a member, and known as the "Beneficiary Fund," is the proceeds of a voluntary payment made by each member of the order; that the grand lodge makes no call for contributions for the purpose of paying any particular beneficiary, nor can any such call be made; that, while it issues a benefit certificate, it contains no promise to pay, and no contract or obligation whatever, and the same is only issued for the purpose of identifying the members and their designated beneficiaries.

The plaintiff's motion was to strike out certain matters stated in the answer, because they were legal conclusions, and the demurrer was for the reason that the matters stated in answer constituted no defense to plaintiff's cause of action; *second,* because it appears from the answer that plaintiff is entitled to the exclusive use of the name in question; and that defendants are using the same illegally; *third,* because the answer shows that defendants are carrying on life insurance on the assessment plan, under plaintiff's name, in violation of its corporate rights. Plaintiff demurred to the counts or divisions of the answer, pleading the statute of limitations and laches on the part of the plaintiff. The lower court sustained plaintiff's motion and demurrer, and the appeal is from these rulings.

It is apparent that the principal question for determination is the right of the plaintiff to the exclusive use of the name "Grand Lodge Ancient Order

of United Workmen of Iowa," and of the letters more commonly used, "G. L. A. O. U. W. of Iowa." It is argued that by reason of the fact that it incorporated under this name, and was given a certificate by the auditor of state to do business thereunder, it became entitled to the exclusive use of the name; that its corporate name is property, which may be protected by injunction. It also insists that defendants are doing a life insurance business upon the mutual assessment plan, without authority and illegally, and that in so doing it is damaging the business and good will of the plaintiff. It is no doubt true that, except as limited by section 1763 of McClain's Code (Acts Twenty-first General Assembly, chapter 65, section 3), a corporation may organize for the purpose of conducting a life insurance business under whatever name it may choose to adopt, provided it does not infringe on the established rights of some other organization or association already in existence under the same or a similar name. And it seems to be well settled that the name of a corporation, while not a part of its franchise, is, to a certain extent, property, and that it will be protected in a proper case on principles somewhat analagous to those applied to trade-marks. *Holmes v. Holmes,* 37 Conn. 278; High, Inj., section 1081; Cook, Stock & S. (3d Ed.) section 699, and cases cited; 1 Thomp. Corp., sections 284-296. The name of a corporation is not, in this state, a franchise, for the selection may be made at the pleasure of the incorporators, or it may be acquired by usage; and its right to the use of the name, it seems to us, can be no greater or different in principle than that of an individual. An individual may use his own name in his business, even though he may thereby interfere with or injure the business of another person bearing the same name, provided he does not resort to any artifice

or contrivance for the purpose of producing the impression that the establishments are identical, or do anything calculated to mislead. *Meneely v. Meneely*, 62 N. Y. 429; *Ottoman Cahvey Co. v. Dane*, 95 Ill. 203; Upt. Trade Marks, 104, 105, *et seq.; Gilman v. Hunnewell*, 122 Mass. 139; *Rogers v. Taintor*, 97 Mass. 291; Adams, Trade Marks, pp. 115, 116. The rule seems to be clearly stated in *Higgins Co. v. Higgins Soap Co.*, 144 N. Y. 462 (39 N. E. Rep. 490), where Andrews, C J., speaking for the court, among other things said: "In respect to corporate names, the same rule applies as to the names of firms or individuals, and an injunction lies to restrain the simulation and use by one corporation of the name of a prior corporation which tends to create confusion, and to enable the later corporation to obtain, by reason of similarity of names, the business of the prior one. The courts interfere in these cases, not on the ground that the state may not fix such corporate name as it may elect to the entities it creates, but to prevent fraud, actual or constructive." From the allegations of the defendants' answer it will be seen that the Ancient Order of United Workmen originated in the state of Pennsylvania in the year 1868; that a grand lodge was organized in that state in the year 1870, and soon after grand lodges were organized in other states; that in February, 1873, these grand lodges organized a supreme lodge, and that this supreme lodge was authorized to institute lodges in any state, subordinate to its jurisdiction; and that when any ten lodges existed in a state it was the duty of the supreme lodge to charter a grand lodge in such state. Pursuant to these regulations a grand lodge was chartered in Iowa in 1873, and the officers of this grand lodge adopted articles of incorporation as a benevolent society in November, 1873, for the purpose of creating, holding, managing, and disbursing a beneficiary fund for the relief of

members of the corporations and their families under
such laws and rules and regulations as are now and
shall hereafter be prescribed by the supreme Lodge A.
O. U. W. of the United States.  In 1882 the schism took
place, and plaintiff adopted certain resolutions of
secession, and in 1884 it adopted articles of incorpora-
tion under and by virtue of which it is now transacting
business as a mutual benefit association.  Those who
remained loyal to the supreme lodge were recognized
by it, and to this day have used and enjoyed the name
of the "Grand Lodge Ancient Order of United Work-
men of Iowa."  From this it appears that the name was
conferred by the supreme lodge of the United States
upon an organization which was subordinate to and
recognized its authority, and that the name is still
used by the defendants under the original authority
conferred upon the organization to which they retain
allegiance.  The question arises, what right, if any,
has the plaintiff, a seceding body, by reason of its
incorporation, to the exclusive use of the name?  It
seems to us that it has no such right.  The defendants
have the prior right to the use of the name, as they
had been using it by permission of the supreme lodge
continuously from the time of the organization of the
original grand lodge up to the present.  The fact that
they are not incorporated is wholly immaterial, for
they have been doing business under this name with
the implied assent of the state authorities during all
these years.  They have not adopted a name selected by
the plaintiff for the purpose of defrauding, or to create
the impression that they are identical with, the plaint-
iff, nor have they done anything calculated to mislead
or deceive the public.  The facts appear to be that the
plaintiffs, in amending their articles of incorporation
and in procuring their certificate from the state audi-
tor, have taken a name which was theretofore in use by

the defendants, and of which they cannot be deprived simply because the plaintiff sees fit to use it as its corporate name. The question here is not whether defendant is doing an unlawful business, but whether it has a right to the use of the name, be its business lawful or unlawful; and this distinction should not be lost sight of. We do not think a corporation can, under the statutes of this state, select a name which is then in use by some other person or persons, and, after recording its articles, insist that this person or persons must abandon the use of the name they have previously selected and under which they are operating. If any damage results to a corporation which selects its name in this manner, it is due to its own folly and indiscretion in selecting a name which is already in existence, and which is used by another body, upon which the name was originally conferred.

In the case of *Ottoman Cahvey Co. v. Dane, supra,* defendant Dane, had in 1875 organized a corporation under the laws of the state of Michigan known as the Ottoman Cahvey Company, and had carried on business as such corporation in the city of Chicago, Ill., from and after that date. On September 24, 1876, the plaintiff organized a corporation under the same name under the laws of the state of Illinois, and thereupon brought suit against the Michigan corporation to restrain it from doing business under the name by which it was organized, averring that the Michigan corporation had been dissolved by the supreme court of Michigan, and no longer had authority to act in the capacity of an incorporated company. The supreme court of Illinois held that, though the defendants had no right to act in their capacity as an incorporated company, yet they had a clear right to continue in business under the name Ottoman Cahvey Company, either as partners or otherwise; and that the plaintiff corporation had no right to assume a name under which

defendants were carrying on their business, and invoke the aid of a court of equity to restrain defendants from the use of the same name. The court, among other things, said: "So far as the complaint was concerned, the defendants had the prior right to the use of the name, as they had conducted their business under the name assumed continuously from the date of the organization of the Michigan corporation; and that the defendants might use the name Ottoman Cahvey Company, as well without a legal organization as they could had they been legally organized under the laws of Michigan." The case of *Association v. Munday*, 21 Abb. N. C. 99, is also closely in point. The plaintiff was incorporated under the name of the Black Rabbit Association. Defendants were unincorporated, but used the same name. It appears that prior to the incorporation of plaintiff an unincorporated organization existed by the name in controversy, and that there had been a schism and division, and that the persons adhering to plaintiff had incorporated under the state laws. The court, in its opinion, among other things said: "The organization sought to be enjoined is one that was in existence and known prior to the formation of plaintiff, and plaintiff, by incorporating itself by a name already in existence, and used prior to its organization, seeks to restrain the other party from its use." It refused the injunction asked by plaintiff, and held that plaintiff had not acquired the exclusive right to the name by the fact of incorporating under the statute. See, also, *Fish Bros. Wagon Co. v. La Belle Wagon Works*, 52 N. W. (Wis.) Rep. 595; *Corbin v. Gould*, 133 U. S. 308 (10 Sup. Ct. Rep. 312); *Van Biel v. Prescott*, 82 N. Y. 630; *Canal Co. v. Clark*, 13 Wall. 311. This is the doctrine applied to trademarks. *Manufacturing Co. v. Spear*, 2 Sandf. 599; *Taylor v. Carpenter*, 11 Paige, Ch. 297; *Meriden Britannia Co. v. Parker*, 39 Conn. 450; *Rogers v. Rogers*, 53 Conn.

121 (1 Atl. Rep. 807, and 5 Atl. Rep. 675).   The right to
protection of a trade-mark depends upon priority of
selection or appropriation.   *Gillott v. Esterbrook,* 47
Barb. 463; Beach, Inj. sections 748, 749; *Columbia Mill
Co. v. Alcorn,* 150 U. S. 460 (14 Sup. Ct. Rep. 151).

It is pertinent to inquire how plaintiff obtained
the right to the exclusive use of the name.   Surely not
by reason of having coined or invented it.   The terms
"Grand Lodge" and "of Iowa" could not be exclusively
appropriated, either as a firm name or as a trade-mark.
One is merely geographical, and the other descriptive;
and either could be used by any person without
infringement upon the rights of others.   The term
"Ancient Order of United Workmen" did not originate
with the plaintiff.   It had a well-defined and recognized
meaning long before plaintiff adopted it, and was
applied, not only in this state, but in others, both to
corporations and unincorporated societies, either fra-
ternal or beneficial or both, from the time of the
organization of the society in Pennsylvania, in the
year 1868, up to the present.   Plaintiff had no right,
for the same reason, to exclusively appropriate a name
which, prior to the time of its incorporation, had a well
defined meaning, and which was properly applied to
societies already in existence.   It did not obtain the
right to use the word by assignment or transfer.   In
fact, it has renounced its allegiance to the body which
originated the name, and which assumes to con-
trol and confer it.   It is claimed, however, that
the auditor of state gave plaintiff the right to
use it under the provisions of McClain's Code, before
cited, which are as follows:   Section 1763:   "No
corporation or association organized under this act
shall take any name in use by any other organization,
or so closely resembling such name as to mislead the
public."   It is sufficient to say in answer to this claim
that as to the defendants the determination of the

auditor is not conclusive, even if it be conceded that he acted judicially in granting plaintiffs a certificate, and found that plaintiffs were entitled to use the name. Defendants were not advised of any attempt to wrest their name from them, and could not appeal from the judgment of the auditor; nor could they sue out a writ of error to test the legality of his conclusion. See *Bixby v. Adams County,* 49 Iowa, 507; *Vose v. Morton,* 4 Cush. 27; *Griswold v. Stewart,* 4 Cow. 458. They are therefore not bound by the certificate of the auditor.

Further claim is made that plaintiff has exclusive right to its name under the decisions of this court in the cases referred to in plaintiff's petition. It is sufficient answer to this to say that no such question was made in either of these cases. Moreover, the corporation was not a party to either of these suits, and if there had been a determination of this question, it would not be binding upon the parties to this litigation. *Newby v. Railway Co.,* 1 Deady, 610 (Fed. Cas. No. 10,144); *People v. Murray,* 73 N. Y. 535; *Geekie v. Kirby Carpenter Co.,* 106 U. S. 386 (1 Sup. Ct. Rep. 315); *Smith v. State,* 21 Ark. 294. We think the defendants' answer pleads facts which clearly show that plaintiff was not entitled to the exclusive right to the use of the name, and that the demurrer to the second count of the defendant's answer should have been overruled.

It is argued on behalf of the appellee, however, that the defendant is and was unlawfully engaged in business as a life insurance company under the mutual assessment plan without complying with the laws of the state, and that for this reason it is not entitled to the use of the name. The question as to the character and legality of the defendant's organization is argued with much skill and learning by counsel on either side of this controversy, but we do not find it necessary to

determine whether defendant is an insurance com-
pany, or an insurance company and a secret
society combined, or a fraternal society pure
and simple; for, if it be conceded that it is an
insurance company, and that it is doing business
without complying with the laws of the state, it is
doubtful, to say the least, whether plaintiff may bring
a suit to wind it up, and enjoin it from doing business
under a certain name. As a general rule, such an
action must be brought by the state. Beach, Inj.,
section 13; *McDonald v. English*, 85 Ill. 232; *Springer
v. Walters*, 139 Ill. 419 (28 N. E. Rep. 761). By the
provisions of McClain's Code (section 1776) it seems to
be made the duty of the auditor of state and attorney
general to institute such suit. But let it be assumed
that the plaintiff may bring such an action, it does not
follow that this gives it the exclusive right to the use
of the name. This depends upon other principles,
which we have heretofore attempted to elucidate.
Concede, however, that plaintiff may bring its suit to
enjoin defendants from using the name and conducting
their business because it is unlawful, yet it does not
follow plaintiff is entitled to relief. The plaint-
iff came into being as a separate organization
at the time it seceded from the loyal body, and
adopted amended articles of incorporation, in the
year 1884. Defendants were at that time doing busi-
ness under the name originally conferred upon them
by the supreme lodge, and they continued to carry on
this same business up to the time of the institution of
this suit, which was in December, 1893. They had a
large increase of membership, paid many death claims
to the families of their members, and have, under the
allegations of their answer, been allowed to proceed
with full knowledge and acquiescence of the insurance
authorities of the state. Many of the members of the
defendant according to the allegations of the answer,

would now be unable, on account of age or disability, to procure membership in any other association, and many others could not procure it without large additional expense. Plaintiff has had knowledge of these facts during all of these years, and yet has taken no action until the commencement of this suit. It seems to us that it is clearly barred and estopped by its laches from maintaining this suit. And we are inclined to the view, although it is not necessary to determine the question, that the suit is barred by the five years statute of limitations.

Plaintiff's cause of action to enjoin the use of the name accrued at the time it was legally incorporated in the year 1884. It was not then required to have a certificate from the auditor of state authorizing it to do business, for the Acts of the Twenty-first General Assembly did not take effect until the year 1886. It could have obtained its certificate from the auditor, if it were necessary to do so to authorize it to bring suit, in the year 1886, and thereupon could have immediately commenced its suit against the defendants. It could not, by delay in procuring its certificate, prolong the operation of the statute. *Baker v. Johnson County,* 33 Iowa, 151; *Hintrager v. Traut,* 69 Iowa, 746 (27 N. W. Rep. 807).

The fact that damage done to plaintiff is continuing—which must be conceded—is not controlling, for this is not an action to recover damages at law, but a suit in equity to enjoin and restrain the defendants from the use of a name. The cause fully accrued when the defendant proceeded with its business in violation of the plaintiff's rights. We have held in law actions for damages that when the act of the defendant was complete before the period of limitation, and the result only was within the statute, a suit for damages was barred. *Powers v. City of Council Bluffs,* 45 Iowa, 652. See, also, *Baldwin v. Gaslight Co.,* 57 Iowa, 51

(10 N. W. Rep. 317); *Williams v. Mills County*, 71 Iowa, 367 (32 N. W. Rep. 444). But, aside from all this, it would be most inequitable to allow plaintiffs at this late day to destroy the business built up by the defendants. Many innocent persons would be compelled to suffer, and much confusion and inconvenience would result to all concerned.

If it should be conceded that the plaintiff had at one time the exclusive right to the use of its name, we think that it has, by its acquiescence and laches closed the door to relief in equity. It is an undoubted rule with reference to trade-marks that reasonable diligence must be used in making application for relief against piracy, and proceedings should be instituted promptly upon discovery. High, Inj. section 1100; *Filley v. Child*, 16 Blatchf. 376 (Fed. Cas. No. 4,787); *Galliher v. Cadwell*, 145 U. S. 368 (12 Sup. Ct. Rep. 873); *Coffeen v. Brunton*, 5 McLean, 256 (Fed. Cas. No. 2,947); Browne, Trade-Marks, section 479; *McLean v. Fleming*, 96 U. S. 258; *Manufacturing Co. v. Garner*, 55 Barb. 151. Plaintiffs say, however, that the former litigation with reference to this association is a sufficient excuse for not bringing this suit promptly upon discovery of defendants' acts. We do not think this is true. The actions referred to were to determine who were entitled to the offices in the association. The first case was decided in the year 1885, and plaintiff could have then commenced its suit, if not before. But neither of these cases, in our judgment, operated to suspend the running of the statute. See McClain's Code, section 3742. We are very clearly of the opinion that the demurrer to the third division of the count of the defendant's answer, at least as to that part pleading laches, acquiescence, and estoppel, should have been overruled.

A great many other questions are discussed by counsel, but, as they are not regarded as controlling, we must decline to consider them.

Our conclusions are that under the allegations of the answer—*First*, plaintiff had no right to the exclusive use of the name; *second*, that, if it had such right, it has lost it by acquiescence and laches; *third*, that if it be conceded that defendant is doing business without authority, plaintiff is in no position to complain. For these reasons the demurrer to the second and third count of the defendant's answer should have been overruled.—*Reversed.*

Kinne, J., took no part.