Donohue, J.
This is an application for an injunction ■by the plaintiff against the defendants, who, as the complaint states, claim to be members of an association called or known as the “ Black Rabbit Association.” The complaint sets out the incorporation of the plaintiff under the act of May 12, 1875, and its amendments, and states the business ■of the company to be that set out in the act. It further ulaims that the defendants, in conjunction with other persons, without the consent or authority of the plaintiff, have held meetings and transacted business under the name of the “ Black Babbit Association,” and sets out that they have circulated notices purported to be issued by the Black Babbit Association—who are about having an excursion and-selling tickets, as authorized by the Black Babbit Association ; that the public are misled by these acts into the belief that it is the excursion of the plaintiff; that defendants are *100 not members of the plaintiff association ; that the plaintiff is also contemplating an excursion, and that by reason of the defendants’ acts it will be unable to sell its tickets;. that it has advertised its association extensively, and that the acts of the defendants are greatly damaging to the-plaintiff’s rights, and are impeding and embarrassing the plaintiff in the performance of its necessary business; that the plaintiff demands on this statement that the 'defendants-be forever enjoined and restrained from holding meetings- and transacting business under and by the names and titles-of the Black Babbit Association, or the Black Babbit Association of Hew York, or Black Babbits; that the defendants and each of them be restrained from issuing circulars, . and selling or disposing of any tickets, invitations, written, or printed announcements, that are being issued by any such association.
The complaint is accompanied by the affidavit of Henry M. Groldfogle, stating that the defendants are not incorporated, also the affidavits of Edward J. Kennedy, who swears he is president of the plaintiff, which is a corporation; that he knows the defendants, and that they are maintaining a-club called “ Black Babbit Association ” or “ Black Babbit Association of Hew York,” and that they are not members of the plaintiff; that their act in using the name as they do-is against the wish and order of the plaintiff; that the-defendants claim the plaintiff is a fraudulent concern, without any right to its corporate name, and that the defendant is the original and genuine society; that the defendants-have advertised themselves largely as the “ Black Babbit Association,” and have advertised an excursion or chowder-party under that name, and claims that the Black Babbit. Association is a social organization and has gained prominence by its select entertainments, and that the plaintiff is-deprived of the full use of its corporate name by the acts-of the defendants and are put to financial loss.
James B. Heal’s affidavit is also annexed. He is the treasurer of the plaintiff and has read the complaint and knows- . *101 the contents thereof; that none of the defendants are officers or agents or connected with the plaintiff; that since the plaintiff’s incorporation the defendants, with other persons whom lie does not know, have combined and organized a club, and named themselves the Black Babbit Association, and have continued to use the plaintiff’s corporate name; that he has notified them not to do it and caused a notice to be served on them forbidding them; that they still represent themselves as that company and are selling tickets, misleading people into the belief that it is the plaintiff which is giving the excursion or clam bake, and have issued postal cards, which were never used or sanctioned by the plaintiff; and that if the defendants are permitted to use the' name of the Black Babbit association, or any name wherein the words Black Babbit are used, the plaintiff will sustain irreparable injury. Also the affidavit of Frederick Stevenson, stating that the defendants have, since the plaintiff was incorporated, formed themselves into an ■organization, and that they are about to have an excursion to New Dorp, August 9, and that the tickets were never authorized by the plaintiff, and that the tickets profess that the entertainment is to be given by the Black Babbit Association.
Elmer W. Brown is also connected with the plaintiff substantially as stated in the affidavit preceding. The affidavit of Frank J. Carroll is also read for the same purpose.
It will be seen that these papers by their statements aver the organization and association of the defendants under the name which they claim to have been since the incorporation of the plaintiff.
The defendants produce the affidavits of Thomas J. Munday, who swears that the defendants are members of an organization known as the Black Babbit Association; that it was organized April 19, 1885; that he was elected the president and has continued as such up to the present time; that it was for social purposes, including excursions and' picnics ; that among the persons who associated in the *102 organization originally- was Frank J. Carroll, one of the persons whose' affidavit is annexed to the plaintiff’s complaint, and that he was on the reception committee on a ball that they gave in December, -1885, the cards for which are annexed to the affidavit; that Edward J. Kennedy, another of the persons who makes an affidavit for the plaintiff, was-also elected a member of the defendant’s, association on February 7, 1886, and was one of the committee on games on August 9, 1886, and participated as one of the committee of the association ; that James B. Real was elected a-, member of the defendant’s association on August 9, 1886, and presented a gold badge to the association,' as set out in the affidavit, which badge is attached to the paper. The badge bears the inscription; “Presented to B. R. Association by James B. Real, August 9, 1886,” and Real, Kennedy and Carroll took part in a ball held December 7, 1886, on committees connected with the ball. That on March 11, 1887, Real and Carroll were a part of the committee of' arrangements appointed by the association; that Real was nominated for chairman of the entertainment by Kennedy, but was defeated by the majority of the votes;' that on April 18, a meeting of the association was held and a letter was received from Carroll, resigning as a member of the-association, to wit: the Black Rabbit Association ; that the resignation annexed to the papers was received and accepted, and Carroll returned the badge, which is also-annexed to the papers, showing it to be of the Black Rabbit Association; that Kennedy was present on April 19, and participated in their proceedings ; that on May 2, 1887, Real tendered his resignation, in writing, which is annexed, and that was accepted; that at the time of the resignation of Kennedy, there was a membership of seventy-five members, which had increased on August 8, to one hundred and four, not including honorary members. There is also produced the affidavit of Richard W. Conroy, that he has heard Monday’s affidavit read and that the same is true, also the affidavit of Muller, that he was a member of the *103 defendant’s association on April 19, 1885, and up to the present time, and its treasurer since September 19, 1885, and that Monday’s affidavit is true, and also the affidavit of James F. O’Hara to the same effect; also the affidavit of John Irvine to the same effect; also the affidavit of Cornelius McCarty to the same effect. It will be seen that the statement on which the injunction was obtained, was one charging that the defendants were using a name that the plaintiffs had first used, and that they had organized subsequent to the organization of the plaintiff.
It is very evident from the proofs before me that such was not the fact; that the organization sought to be enjoined is one that was in existence and known long prior to the formation of the plaintiff’s association ; and that the plaintiff’s association have apparently simply made an effort by incorporating itself to take the name which was already in existence and used prior to its organization, and then restrain the party who used and is using it from its use.
The defendants had acquired the name prior to the plaintiff’s incorporation, and have had a property right in it, if a property right could exist in a name—certainly the right to the name ; and the question, is, Is there anything in the statute that will enable persons who thus take a name which they know to be already in existence, and by incorporating themselves, put them in a position to prevent all .others from using that name, including those who are- already acting under it ? There is nothing in the act which leads me to any such conclusion. The words of the act undoubtedly refer to rights thereafter to be acquired, or the right thereafter to adopt, not those already in existence and vested.
There is nothing in the act to show that the Legislature intended to permit any person to thus get possession of a name, or its use, that belongs to some other person or association ; and if there is any such inference from the act, it seems to me that it cannot be in the power of the Legislature to thus take away from any person or association rights which they had, and bestow them on any one else.
*104 ■ ' The matter in dispute may be a very small one and may aiot be important, but the question involved is one of great importance. It is the question whether dissatisfied members of a voluntary institution can, by incorporating themselves, deprive the association with which they áre dissatisfied of rights which they have acquired, and vest themselves—the dissatisfied members—with those rights. On the ground, therefore, that the plaintiff suppressed, in the complaint and affidavits, the fact that the association they sought to restrain was prior in date to their own, and on the ground that the prior association’s rights •cannot be taken away in the manner the plaintiff has attempted to do, the motion for an injunction will be denied:
: Ordered accordingly.