RUDOLPH v. SOUTHERN BENEFICIAL LEAGUE.

(*Supreme Court, Special Term, New York County.   July 1, 1889.*)

1. ASSOCIATIONS—POWER OF EXECUTIVE BOARD—INCORPORATION.
    The executive board of a voluntary association cannot convert it into a corporation, unless the power is conferred on it by the constitution and by-laws, or by an express resolution of the association.
2. SAME—ELECTIONS—EXTENDING TIME TO VOTE.
    When all the voters at an election held by the association were members in good standing, entitled to vote, the fact that the polls were kept open after the time prescribed by the constitution and by-laws will not avoid the election.
3. SAME—ACTION OF COMMITTEE—INJUNCTION.
    Where the decision of a committee of a voluntary association, transferring property and affecting pecuniary interests, operates unjustly as to any members, the enforcement of the decision will be restrained.

**4. SAME—RATIFICATION.**

It is necessary that a meeting to ratify the action of a committee which has exceeded its powers in incorporating a voluntary association be called by competent authority; that the members at large of the association be notified of the meeting and its purpose; and that a majority of the members attend.

**5. SAME—USE OF NAME.**

Members of a voluntary association, who have incorporated themselves under the name of the association without its consent, may be enjoined from using that name.

Action for an injunction by James J. Rudolph, president of the Southern Beneficial League, against the Southern Beneficial League.

*T. McCants Stewart*, for plaintiff. *George W. Dease*, (*John A. Grow*, of counsel,) for defendant.

LAWRENCE, J. This action is brought by the plaintiff, as the president of the Southern Beneficial League, against the Southern Beneficial League, to restrain and enjoin the defendant, its officers, servants, etc., from using the name "Southern Beneficial League," and from in any manner interfering with the affairs, proceedings, moneys, funds, or other property of the association, and to recover damages alleged to have been sustained by reason of the alleged unlawful acts of the defendant, and for·such other and further relief as may be deemed just and proper. The association represented by the plaintiff is a voluntary association, which was organized on the 16th of May, 1886, and in the preamble to its constitution it is declared that "its object is to perpetuate our love and patriotism for the land of our birth; to provide for the sick, distressed, and indigent brothers who have left the place of their nativity in search of sustenance, education, and progression; to bury them when deceased; to unify our mutual interests as true sons to the manor born; to be true to ourselves and those dependent upon us, while recognizing the brotherhood of man and the fatherhood of God."

From the evidence in the case it appears that on the 23d of May, 1888, a certificate of incorporation was approved by me, as one of the justices of this court, incorporating certain persons under the name of "The Southern Beneficial League," the objects for which said corporation was organized being stated in the certificate to be the same as those for which the voluntary association was formed.

It is claimed that the persons whose incorporation was asked for by the executive committee of the voluntary association had no right to appropriate the name in question, or to become possessed of the funds and property of the association, for the reason that said committee was not authorized by the association to apply for the certificate of incorporation. In the constitution of the voluntary association the executive board is also called the "Executive Committee." The duties of the executive committee are defined by article 5 of the constitution. Section 1 provides that the executive board shall meet regularly prior to the monthly meeting of the league to consider and arrange all matters pertaining to the welfare of the league. Section 2 provides that they shall audit and examine all books, decide upon and authorize all expenditures of the league, in accordance with the instructions received therefrom, and transact all business of importance. Section 3: "They shall also serve as a court of appeals for the league, to which shall be referred for final action all matters of difference that may arise. Seven members shall constitute a quorum." By article 13 of the by-laws of the voluntary association, (section 1,) it is provided that "the executive board shall meet regularly, one week in advance of the regular meeting of the league, to perform its constitutional duties, take in consideration the welfare of the league, and advise such measures as in their judgment will be beneficial to the league." Section 2: "The executive board shall assist the steward in case of emergencies pertaining to his duties, and, during the interim of the league, draw upon the treasurer for

such weekly aid as provided by the constitution and by-laws for the benefit of sick members." By section 1 of article 14 of the by-laws it is provided that, "should a member defraud or in any way or manner wrong the league, he shall, on the charge being proven to the satisfaction of the league, after his case has been investigated by the executive board, be expelled, and forfeit all moneys paid by him into the league." Section 5 of article 15 of the by-laws prescribes the manner of electing the members of the executive board, but does not relate to their powers. The provisions from the constitution and the by-laws to which I have referred are all that I have been able to find relating to or defining the powers of such board. It will be seen that the power to apply for a certificate of incorporation, and to convert the voluntary association into a body politic and corporate, is not among the powers expressly conferred upon the executive board; but it is contended that the association, by resolution, expressly authorized the executive board to make such application.

The evidence upon this subject is contained in the minutes of various meetings of the league, which have been produced before the court, and the question as one of fact comes down to this: Was the power to apply for such certificate ever given to the board by the association, or was the matter of incorporation merely recommitted to it, with directions to await the final orders of the league? It appears from the report which was submitted on the 23d of December, 1887, by the chairman of the executive committee, Dr. Miller, that it was recommended that the incorporation of the league be deferred until May, 1888, for the following reasons: "The persons who are incorporated will have to hold office for one year from date of incorporation, which will bring the incorporate body's election in January, 1889. The election of officers of the league, in accordance with the constitution, comes off first Friday in May, 1888." It was moved and seconded that the report stand approved, all but the part pertaining to the incorporation of the "S. B. L.," and that motion was carried. It was moved further, that the incorporating part of the report be referred back to the "E. Board" for completion. As a substitute to this last motion it was moved that the "E. Board" be relieved "from the duty of incorporating the 'S. B. L.,' and the league appoint a committee to perform the duty of incorporating." This substitute was carried. No committee appears to have been appointed under this resolution. From the minutes of the executive board it appears that the subject of obtaining a certificate of incorporation had been frequently discussed prior to the report to the league and the passage of the resolution to which I have just referred. The passage of the substituted resolution by the league seems to have been regarded by the executive board as a reflection upon it, and on the 30th of December, 1887, it was resolved that the committee tender their resignation, but subsequently, at a meeting held on the 4th of January, 1888, on motion of Mr. Alexander, the executive committee reconsidered their intention to resign in a body. On the 6th of January, 1888, at a meeting of the league, Mr. Alexander read a communication in reference to the incorporation of the "S. B. L." being taken out of the hands of the executive board; also recommended that it be recommitted back to them for completion. The president said: "In order to do this it would be necessary to reconsider the motion that had taken the power of incorporation from them, (the E. Board,) that it may come before the league for debate." It was moved and seconded that said motion be reconsidered, which motion was carried. The minutes also recite that "motion yet stand to be amended, substituted, rescinded, or reaffirmed, and that motion pending is, 'shall the league relieve the executive board of the power of incorporating the league, and appoint a committee to complete the incorporation?'" That pending that motion the meeting adjourned. In the minutes of the meeting of the league held on the 3d of February, 1888, the following appears: "Unfinished business. Motion pending from a former meeting: Shall the league recommit the incorporation

back to the executive committee?" Then follow the words: "On motion, said incorporation was recommitted back to the E. Board for completion." Lines are drawn through these words, and afterwards follows this statement: "On motion, the E. Board were requested to lay the matter of incorporation over until after the next election of officers of the league, and await further orders from the league." It is claimed that the erasure of that portion of the minutes which referred the matter of incorporation back to the executive board for completion was fraudulently made, and that the words "await further orders from the league" were fraudulently inserted.

After very carefully examining the evidence upon this subject, I have reached the conclusion that the statement of Mr. Younger, the secretary, is true, and that the erasures and corrections made in the book were made in obedience to the directions of the league in open meeting. He is corroborated in his statement by several witnesses, among them Messrs. Lattimore, Randolph, Johnson, Rudolph, and Hopewell. Sitting as a juror upon this question of fact, I am of the opinion that the strong preponderance of the evidence supports the truth of the secretary's statement. In the minutes of the meeting of the league held February 24, 1888, it is stated that the minutes of the last regular meeting were read. On motion they were adopted with proper corrections, viz.: "'That the committee on incorporation await further orders' be inserted." The executive board reported progress; also requested that the four vacancies in said board be filled. In respect to these minutes it is claimed that the entry: "'That the committee on incorporation await further orders' be inserted," was fraudulently made by the secretary. Corroborated, as he is, by the witnesses to whom I have above referred, and impressing me, as he did, by his demeanor upon the stand as' one who was telling the truth, I shall accept his statement, notwithstanding the expert testimony which was offered on the part of the defendant. If I am right in my conclusion as to the facts, up to the date of the election of officers, which occurred on the 4th of May, 1888, no power has been vested in the executive board to obtain a certificate of incorporation. The matter had been, after some misunderstanding, recommitted to them, with directions to await the further orders of the league. In a matter of such importance it is incumbent upon the agent who claims the power to bind his alleged principal to show most clearly that he has received such power from his principal. The conversion of this voluntary association into a corporate body was one of the gravest and most serious acts which could be directed to be performed; and those members of the league to whom it is alleged that power was committed, when that power is challenged, must be prepared to prove its existence by the amplest authority. As I understand the evidence in this case, they had no such power, either under the constitution or the by-laws; nor had they on the 23d of May, 1888, received it by the express resolution of the league. It is very much to be regretted that an association formed for the benevolent objects and purposes to which the constitution of this association refers should have become involved in such unfortunate difficulties. It is also much to be regretted that the feelings of the members have become so much excited as to endanger the usefulness of the society. But, looking at this matter from a merely legal stand-point, I am forced to conclude on the testimony that the executive board, in obtaining the certificate of incorporation, exceeded its powers. These views, in the absence of a ratification of the action of the executive committee by the association, would lead necessarily to the granting of a portion of the relief which is demanded in the complaint; but as the question of ratification and other questions were discussed upon the trial, and evidence was given in regard to them, it is proper that those questions should be considered before finally disposing of the case.

The contention of the executive board is that the original plaintiff in this action, Mr. Jarrott, had no standing in court, because he was not legally

elected. It is claimed that the polls were kept open after 11 o'clock, in violation of the constitution, and that the alleged election of Jarrott was therefore null and void. Upon turning to the minutes of the meeting of the league held May 4, 1888, I find that the total vote cast for president was 378, of which Mr. J. W. Alexander received 150 and Mr. T. C. Jarrott 228 votes, thus electing Mr. Jarrott by 78 majority. There is no evidence in the case which shows that those who voted at the election were not all members in good standing, entitled under the constitution and by-laws of the league to vote, and the mere fact that the polls were kept open after the time prescribed by the constitution and by-laws does not, in my opinion, vitiate the election. I had occasion in the case of *People* v. *Hosmer*, 2 How. Pr. (N. S.) 472, to examine a somewhat similar question, and I came to the conclusion in that case that a duly-qualified voter who presented himself within the place of registration before the hour of 9 o'clock in the evening, and demanded to be sworn, had a right to be registered, and that the inspectors, although the hour of 9 o'clock had arrived, could not refuse after that hour to register such voter. There is some evidence in this case which it may be claimed tends to show that parties were allowed to vote who came into the room after the hour of 11 o'clock, but it is not of such a character as to convince me that any illegality was committed, or that the election in its result did not express the wishes of the majority of those attending the meeting who were legally entitled to vote. See, also, upon this subject, *People* v. *Railroad Co.*, 7 Abb. Pr. (N. S.) 265, and *In re Railroad Co.*, 19 Wend. 135.

It is claimed, however, that the executive board declared the election in question to have been illegal, and it is asserted that, as the Southern Beneficial League is a voluntary society, the court ought not to interfere in matters relating to its internal and governmental affairs, because those matters are regulated by its constitution and by-laws. While such is the general principle applicable to cases of this nature, it is also true that the courts ought not to be ousted of their jurisdiction where property rights and pecuniary interests are concerned. And where it is sought by the decision of a board or committee, or an appellate tribunal, in a voluntary association, to transfer property and affect pecuniary interests, the courts will not lend their aid to give effect to the decrees of such a tribunal. See *Austin* v. *Searing*, 16 N. Y. 112; *Lloyd* v. *Loaring*, 6 Ves. 773. If the courts will not enforce the decisions of such tribunals in the exercise of their equitable powers, they have the right to restrain the enforcement of such decisions where they will operate harshly and unjustly to any individual member or number of members. See Nibl. Mut. Ben. Soc. § 132 *et seq.*, and cases cited. Further, it is to be observed that in the case of this particular society the constitution and by-laws are entirely silent as to the power of any committee or board to set aside an election. It is true that by section 3 of article 5 of the constitution it is provided that "the executive board shall serve as a court of appeals for the league, to which shall be referred for final action all matters of difference that may arise." This language does not, to my mind, import that the executive board may set aside an election, but relates, it seems to me, rather to questions of difference between members of the society, or between the society itself and any of its members. The construction which is claimed for it would make the executive board, in point of fact, the society, and would permit it, from whim or caprice or other motive, to set aside any election, no matter by how large a majority the candidates at that election might have been chosen. I conclude, therefore, that neither in law nor in fact was the election of the 4th of May, 1888, illegal, and that therefore this action was properly brought in the name of Jarrott, as the president of the voluntary association, and continued in the name of the present plaintiff, who has been elected in the place and stead of Mr. Jarrott.

It is furthermore claimed that the action of the executive board in obtaining the certificate of incorporation was ratified by the league at the meetings which were held on the 31st of May, 1888, and on the 6th of June, 1888, at Grand Union Hall. Inasmuch as these meetings were apparently convened on the assumption that the executive board had the power to nullify the action of the society in the matter of the election, it may well be doubted whether, in any aspect, the action taken thereat could affect the legal *status* as between the corporation and the voluntary association. I prefer, however, to rest my decision in respect to this branch of the case upon the point that there was no such ratification at either of these meetings as would bind the voluntary association, and so operate as to transfer to the incorporation the property and funds of the voluntary association. The meeting of the 6th of June was characterized by riotous and disorderly proceedings; and it is extremely questionable, upon the evidence presented, whether a majority of those present voted to accept the certificate of incorporation. It is furthermore to be observed in respect to those meetings that they do not seem to have been called under competent authority; nor is it clear that the members at large were notified that such meetings would be held, or of the purposes for which they would be convened. Before it should be decided that there has been a ratification of the certificate of incorporation, the clearest evidence should be presented that the society at large, duly convened, with full knowledge of the object for which the meeting was held, has given its assent to the action of the executive committee. The evidence fails to show that at either of the meetings at which a ratification is claimed to have taken place a majority of the members of the society were present, and, as the burden of proof in this respect is upon the defendant, I must hold that it has failed to make out its case.

Finally, it has been held in the case of *Association* v. *Munday*, 21 Abb. N. C. 99, that the dissatisfied members of a voluntary association cannot by incorporating themselves deprive the voluntary association of the right of using its own name. It has also been held in the case of *McGlynn* v. *Post*, 21 Abb. N. C. 97, that an action lies on behalf of an unincorporated association to enjoin a part of its members from procuring the incorporation of a society under the name used by the association. For these reasons I think that the plaintiff is entitled to judgment for an injunction restraining "the defendant, its officers, servants, etc., from in any manner interfering with the affairs, work, doings, proceedings, and moneys of the said association, and from using the name 'Southern Beneficial League,'" and for the costs and disbursements of this action. Let findings and a decree be prepared in accordance with these views, and settled on one day's notice.