## GOLLER v. STUBENHAUS et al.

(Supreme Court, Special Term, New York County. January, 1912.)

1. ASSOCIATIONS (§ 20*)—ACTIONS BY OR AGAINST ASSOCIATIONS.

Under Code Civ. Proc. § 1919, authorizing actions by or against the president or treasurer of unincorporated associations, where an action is brought by a person claiming to be the president of such an association against another, also claiming to be the president, to restrain the defendant from interfering with the rights and property of the association, using its name and seal, or from selling, disposing of, or incumbering its property, although the title to office is not to be tried, it is necessary to determine who is the president, in order to determine whether the action is maintainable.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 36–43; Dec. Dig. § 20.*]

2. ASSOCIATIONS (§ 5*)—CONSTITUTION—BY-LAWS—EVIDENCE.

In an action between rival claimants to the office of president of an unincorporated association, evidence *held* insufficient to show the adoption of a written constitution by the association.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 4–6; Dec. Dig. § 5.*]

3. ASSOCIATIONS (§ 17*)—CONSTITUTION—BY-LAWS—USAGE.

When an association has adopted no constitution or by-laws, the manner of conducting election of officers and their tenure of office is to be determined from the resolutions and usages of the association.

[Ed. Note.—For other cases, see Associations, Cent. Dig. § 30; Dec. Dig. § 17.*]

4. ASSOCIATIONS (§ 18*)—OFFICERS—ELECTION—EVIDENCE.

In an action between rival claimants to the office of president of an association, evidence *held* insufficient to show the adoption of a resolution at the time when, by the usages of the association, a new election of officers should have been held, providing that the old officers should continue in office until a subsequent date.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 31–35; Dec. Dig. § 18.*]

5. ASSOCIATIONS (§ 18*)—ADOPTION OF BY-LAWS—EVIDENCE.

In an action involving the validity of a special meeting of an association called by the vice president, evidence *held* insufficient to show the adoption of a by-law providing that if the president refused to act, or acted illegally, the vice president could act in his place.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 31–35; Dec. Dig. § 18.*]

6. ASSOCIATIONS (§ 17*)—MEETINGS—NECESSITY OF NOTICE.

If, under special circumstances, a majority of the members of an association have an inherent right to call a special meeting of the members,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

it is essential to its validity that all of the members be notified of the time and place thereof and the purpose for which called.

[Ed. Note.—For other cases, see Associations, Cent. Dig. § 30; Dec. Dig. § 17.*]

**7. ASSOCIATIONS (§ 17*)—OFFICERS—REMOVAL.**

Where, although an association had never adopted a constitution or by-laws, it was governed by resolutions adopted from time to time, under which elections of officers were held at stated times, the attempted removal of the officers at a special meeting was ineffectual, where no specific charges were ever formulated or served on the officers, or notice given that charges would be presented at that meeting, and no notice even to attend the meeting was given to any of the officers, except the president, especially where only 8 of the 16 members of the association attended the meeting, even conceding that the meeting was legally called.

[Ed. Note.—For other cases, see Associations, Cent. Dig. § 30; Dec. Dig. § 17.*]

**8. ASSOCIATIONS (§ 17*)—MEMBERS—POWERS.**

As a general rule, in the absence of a rule or usage to the contrary. a majority of the members of an association possess authority to control the actions thereof as to all matters within the scope of the objects for which it was formed, whether mentioned in the articles of association or necessarily implied therefrom.

[Ed. Note.—For other cases, see Associations, Cent. Dig. § 30; Dec. Dig. § 17.*]

**9. ASSOCIATIONS (§ 18*)—OFFICERS—ELECTIONS.**

Where no election of officers of an association was held at the time provided by resolutions and usages of the association, those then in office continued therein until their successors were elected and qualified.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 31–35; Dec. Dig. § 18.*]

**10. ASSOCIATIONS (§ 20*)—ACTIONS BY OR AGAINST—RELIEF.**

In an action by a person claiming to be the president of an unincorporated association, to restrain another claimant to that office from interfering with, disposing of, or incumbering the property of the association, where the evidence shows that the defendant is the president, the plaintiff is still entitled to the relief asked against the defendant as president, under Code Civ. Proc. § 1919, if the evidence shows a conspiracy by the members of the association.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 36–43; Dec. Dig. § 20.*]

Action by Jacob Goller, as president of the First Neustadter Congregation Sick & Benevolent Association, against Abraham Stubenhaus and others, to restrain defendants from interfering with the rights and property of plaintiff's association. Judgment for plaintiff. See, also, 140 App. Div. 913, 125 N. Y. Supp. 1121.

Sophie Mayer, of New York City, for plaintiff.
Harry Stackell, of New York City, for defendants.

GIEGERICH, J. The action is to enjoin and restrain the defendant from interfering with the rights and property of the First Neustadter Congregation Sick & Benevolent Association in any manner whatsoever, from using the name and seal of the said congregation, and from selling and disposing of or incumbering the property of the same, be it real or personal, and from disturbing the meetings

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the congregation, and for such other and further relief in the premises as to the court may seem just and proper.

The amended complaint alleges that the First Neustadter Congregation Sick & Benevolent Association is a voluntary association, consisting of seven or more members and organized for religious worshiping and benevolent purposes; that the plaintiff is its duly elected president; that the defendants are members of the congregation; that the congregation is the owner of certain personal property, consisting of scrolls, prayer books, prayer shawls, a congregation seal, and other paraphernalia, books and papers, and real property, consisting of burial grounds for the burial of members of the congregation and their families; that in order to disrupt the organization, and to appropriate its valuable property and rights, the defendants have conspired together and threatened to and did perpetrate certain unlawful acts, viz.: First. That the defendant, Abraham Stubenhaus, and his accomplices, held several meetings in the month of January, at which, by intimidation, threats, and physical force, they declared themselves elected officers of the congregation, in spite of the fact that no nomination nor election was held at such or any other meetings. Second. That the defendants took the personal property of the congregation and placed the same in the house of the defendant, Abraham Stubenhaus, and threatened to sell the same and to appropriate the proceeds to their own use and benefit. Third. That, contrary to the provisions of the by-laws of the congregation that the burial grounds owned by it should be used only for the burial of its members and their families, the defendants threatened to sell and give away plots for graves in the said burial grounds, and threatened to give permission to persons other than the members of the congregation and their families to be buried therein.

The answer of the defendant Stubenhaus, by its failure to deny, admits the allegations of the amended complaint as to the congregation being a voluntary association, and that the defendants were members of the congregation at the times alleged in the amended complaint. The answer in effect denies the other allegations of the amended complaint, and alleges, as a separate and distinct defense, that the plaintiff, Jacob Goller, is not, and at the time of the commencement of the action was not, the president or treasurer of the voluntary association referred to in the amended complaint, and that the congregation is not and was not at any time a body corporate and has no legal capacity to sue. The answer, for a second separate and distinct defense, alleges that at all the times mentioned in the amended complaint the defendant was and still is a member of a certain voluntary association known as the First Neustadter Congregation Sick & Benevolent Association, which is composed of more than seven members, and which the defendant believes is the voluntary association referred to in the amended complaint, and that at no time prior to or since the commencement of the action was any resolution adopted by the members of the voluntary association, or by a majority of them, authorizing or empowering Jacob Goller, hereinabove named, or any other person or persons, to institute or maintain this action; nor has the institution or the maintenance of this action been

at any time ratified or confirmed by the members of said voluntary association, or a majority of them.

It is very much to be deplored that an association organized for the very worthy purposes above stated should be torn by internal dissensions. So far as I can gather from the evidence, when the troubles arose in January, 1909, the congregation had but 16 members in good standing and only $43.29 in cash in its treasury. Although the congregation owns a plot in the Mt. Zion Cemetery for the burial of its members and their families, the purchase price thereof, viz., $510, has not been fully paid, there still remaining due and unpaid installments and interest amounting to $247.87. · Notwithstanding all this, the members of both factions are disinclined to adopt the suggestions offered by me that steps be taken to incorporate the congregation under the Religious Corporations Law, or, if the members did not favor its incorporation, that an election of officers be held in the near future. ·I regret exceedingly that all efforts to reunite them have been unavailing.

[1] ·The initial question to be decided is: Which of the rival claimants was the lawful president of the congregation when this action was commenced? In passing upon such question it should be pointed out that the title to office is not being tried, but the determination of such question is necessary, in order to fix the status of the parties with a view of deciding whether or not the injunctive relief prayed for should be granted; for, if neither claimant was the president at the time referred to, the action cannot be maintained, as will be seen from a reading of section 1919 of the Code of Civil Procedure, which provides:

"An action or special proceeding may be maintained by the president or treasurer of an unincorporated association, consisting of seven or more persons, to recover any property, or upon any cause of action, for or upon which all the associates may maintain such an action or special proceeding by reason of their interest or ownership therein, either jointly or in common. An action may likewise be maintained by such president or treasurer to recover from one or more members of such association his or their proportionate share of any moneys lawfully expended by such association for the benefit of such associates, or to enforce any lawful claim of such association against such member or members. An action or special proceeding may be maintained against the president or treasurer of such an association to recover any property, or upon any cause of action for or upon which the plaintiff may maintain such an action or special proceeding against all the associates by reason of their interest or ownership or claim of ownership therein, either jointly or in common, or their liability therefor, either jointly or severally. Any partnership or other company of persons which has a president or treasurer is deemed an association within the meaning of this section."

[2] This brings up the question whether or not at the time of the alleged elections the congregation was governed by a written constitution or by-laws, on which point the evidence is conflicting. The plaintiff's witnesses testified that a constitution and by-laws were adopted, and were written out in a book, which the defendants told them had been lost. This was denied by the latter, who, as well as the witnesses called by them, denied that any constitution or by-laws was ever adopted and that such book ever existed. · The minute book of the congregation was produced upon the trial, and the first mention of a

constitution is made in the minutes of the meeting of May 12, 1906, when a committee was appointed to draft a constitution. This is a sufficient answer to the contention of the plaintiff that there was a written constitution prior to the time last mentioned. The minutes of the meetings of the congregation since that time fail to disclose any report of such committee, nor do they show that a constitution was ever adopted. On this issue I find that the congregation was not governed by a written constitution, but by resolutions which were adopted from time to time.

[3] We must therefore look to such resolutions and to the usages of the congregation for guidance as to the time and manner of conducting elections of officers and their tenure of office. As is said in 3 Am. & Eng. Enc. Law (2d Ed.) p. 1070:

"Officers may be elected in the manner prescribed in the constitution of the association or the by-laws, in pursuance thereof, and not legally otherwise, unless it so happens that no such provision has been definitely made, in which case usage may be allowed to furnish a provision or a practical interpretation of an indefinite one."

[4] All the witnesses agree that according to the rules and usages of the congregation the term of the various officers was six months, and that elections were held on the second and fourth Saturdays of the months of January and July. The regular meetings of the congregation were held on the second and fourth Saturdays of each month. The witnesses for both parties agree that nominations for officers are to be made at three separate meetings; the election taking place at the same meeting when nominations are made for the third and last time. This is borne out by the minutes of the congregation, which show that as far back as 1905 nominations for officers were made at three different and successive regular meetings; the last taking place at the same time when the elections were held. The defendant Stubenhaus claims that he was re-elected president of the congregation at a regular meeting held on January 16, 1909. According to the minutes of the congregation, he was first elected as such president on January 12, 1907; 14 votes being cast for him and 7 for Jacob Goller, the plaintiff in this action. He appears to have been re-elected without opposition for the second and third terms; but when he was elected for a fourth time he was opposed by one Reiss, who received 5 votes, as against 11 cast in his favor. There is an irreconcilable conflict of evidence as to what transpired at the meeting of January 16, 1909, at which the defendant Stubenhaus claims to have been elected for the fifth time. The defendant's witnesses testified that the members were notified in writing that nominations for officers would be in order at the various meetings which they were requested to attend. The plaintiff and his witnesses testified that, notwithstanding such notification, the defendant Stubenhaus, as the presiding officer, would not entertain any nominations at the meeting of January 16th, or at either of the two meetings which preceded it. The minutes of the meeting of January 16, 1909, claimed to have

been kept by the then recording secretary, one Freedman, contain the following entry:

"It was resolved by all the members that all the old officers continue in office until the 1st day of July, 1909."

Freedman was not called as a witness upon the trial; it being undisputed that he was in Europe when it took place. The plaintiff claims that the minutes of such meeting were not written by Freedman, but by some third person subsequent to the meeting. If the testimony of the witnesses called by the plaintiff be given any credence whatever, such minutes are wholly at variance with the actual occurrences of the evening in question. The plaintiff claims that at such meeting he and his followers demanded of the defendant Stubenhaus, as the presiding officer, that the congregation proceed to the nomination of candidates for the various offices, which, the plaintiff and his witnesses testified, the said defendant refused to do, and they further testified that no election of officers took place at the meeting of January 16th, which was held in the defendant's apartments, and that when at a subsequent meeting, viz., on January 30th, which was also held in the defendant's apartments, the minutes of the preceding meeting were read, they protested against that part which stated that it was resolved that the old officers be continued in office until the 1st day of July, 1909, for the reason that no such resolution was ever offered or adopted. They claim that their protest was unheeded, and that the defendant Stubenhaus acted so arbitrarily that at the close of the meeting 7 members united in a request to call upon the vice president, Louis Klein, to call a special meeting for February 3, 1909. There was an attendance of 8 members at such meeting, at which the plaintiff was elected president, and others were elected to the various other offices of the congregation, as will hereafter more fully appear.

According to the receipt book of the financial secretary in office on January 16, 1909, 10 members attended the meeting of that date. Of these, 5 attended the special meeting at which Goller claims to have been elected president. There is sufficient evidence in the case to warrant a finding that the only members who attended the meeting of January 16th were those who paid their dues on that day. The probabilities are, therefore, that, had a resolution been offered to continue the defendant Stubenhaus in office, it would have been opposed. As seen, he was opposed at the preceding election, and, as shown by subsequent events, those who were opposed to him had not become reconciled when the time for the election of new officers arrived. In view of all this, I do not think that a resolution of the character claimed was either introduced or passed at the said meeting of January 16th. Having thus shown that the defendant Stubenhaus was not re-elected at the time he claims he was, the claim of the plaintiff to the presidency of the congregation will now be considered.

[5] It is urged on behalf of the plaintiff that:

"The by-laws of the congregation provided that in the event the president refuses to act, or acts illegally, the vice president takes the president's chair and acts in his stead. The same by-law further provides for the calling of a special meeting to complete or finish the business remaining unfinished by the president."

Counsel for the plaintiff further contends that:

"Three meetings were called in January, 1909, for nomination and election of officers. The defendant refused to proceed with the election, indeed with an orderly transaction of business, driving the members from the place. The proper and legal remedy was to call a special meeting and complete the unfinished work—have third nominations and election—and that was done."

The defendant's witnesses denied that such a by-law or rule was ever adopted. After examining the minutes of meetings, I am unable to find therein any mention or entry of the adoption of any resolution or motion of the character claimed, and I reach the conclusion that none was ever adopted or passed. Even if such a resolution was passed, the proof fails to show that a demand was ever made of the defendant Stubenhaus to call a special meeting and that he refused to do so. Moreover, it appears from the minutes of the special meeting that it was not called, as claimed, to complete or finish unfinished business, but for an object stated as follows:

"Neglect of duty on the part of the president towards the society."

[6] Assuming, however, without deciding the point in favor of the plaintiff, that under the peculiar circumstances of the case a majority of the members had, in the absence of any rule upon the subject, the inherent right to have a special meeting called, it is nevertheless essential to the validity thereof that all the members be notified of the time and place thereof and the particular purpose for which it was called. Rudolph v. Southern Beneficial League, 7 N. Y. Supp. 135, 139; 4 Cyc. 308. While there is some evidence that Freedman, the secretary, was directed by the vice president, one Louis Klein, to notify the members of such special meeting, there is no evidence that such notice was given to all the members. On the contrary, some of the members favorable to the defendant Stubenhaus testified that they did not receive any notice whatever to attend the meeting. As already stated, Freedman, who is claimed to have notified the members, was in Europe when the case was tried. His deposition was not taken, nor was there any testimony adduced that such notices were prepared and mailed or delivered to all the members.

[7] The plaintiff contends that, if the congregation had no by-laws, the defendant Stubenhaus could be removed by a majority of the members and another elected in his stead, and therefore that the action of the members at the special meeting of February 3d in electing a new board of officers was legal. The case of Ostrom v. Greene, 161 N. Y. 353, 55 N. E. 919, is cited in support of the position contended for; but upon examination it will be found that there the association had no articles of association, constitution, by-laws nor rules of procedure, nor had it made any provision for stated meetings or for calling special meetings or for the terms of its officers. In the present case, the situation is entirely different. Although no constitution nor by-laws were ever adopted, the congregation, as already stated, is governed by resolutions which have been adopted from time to time. It has also stated or regular meetings held on the second and fourth Saturdays of each month, and its officers are elected at the regular meetings held on the second Saturdays of January and

July for the term of six months. The rule applicable to the removal or suspension of officers of unincorporated or voluntary associations is thus stated in the Cyclopedia of Law and Procedure (4 Cyc. 310):

"In the absence of a definite provision concerning the term of office, an officer holds his position merely at the pleasure of the association, and may be removed without either cause or notice, though where such provision exists it is controlling."

Since the tenure of office of the officers of the congregation was fixed, their removal or attempted removal, as gathered from the minutes of the special meeting, and as hereinafter shown, was wholly unauthorized. The minutes of the special meeting of February 3d, after reciting the objects of the same as above set forth, contain the following:

"Whereas, the president was called upon by the brothers to appear at a special meeting, and he failed to come, a motion was made by Brother Reiss to have election of officers, and an election took place. Brother Goller was unanimously elected president by all present brothers; Brother Reiss was unanimously, by all brothers, elected vice president; Brother Gottfried was unanimously elected recording and financial secretary, and Brother Schwartz was elected unanimously cashier; wherewith brother chairman closed the elections. Then Brother Eisenhandler made a motion that the chairman appoint a committee to visit the ex-president, that the latter return the congregation's property to the newly elected officers. The committee consisted of Brothers Gottfried and Eisenhandler. Thereupon Brother President Goller closed the meeting in peace and harmony."

It will be seen from the foregoing recitals that the defendant Stubenhaus is recognized as the president of the congregation, and that because he failed to appear a new election, not only for president, but for the entire board of officers, was held. I do not think that the members who attended the special meeting had a right to take such action, and it cannot be justified, even upon the theory that a majority is entitled to control.

[8] While it is undoubtedly a rule applicable to unincorporated or voluntary associations that, in the absence of a rule or usage to the contrary, a majority of its members possess authority to control the actions thereof as to all matters within the scope of the objects for which it was formed, whether such objects are mentioned in the articles of association or are necessarily implied therefrom (4 Cyc. 310), I do not think such rule applies to the case at bar, at least so far as the attempted removal of the officers is concerned. Even if these views are erroneous, a majority of all the members in good standing, 16 in number, did not participate in the proceedings of the special meeting. According to the evidence adduced in behalf of the plaintiff, 8 members took part, which is not a majority. In the next place, no evidence was adduced showing that any specific charges were ever formulated or served upon any of the officers, nor that timely notice was given to any of them that charges against them would be presented at such special meeting and acted upon. All that appears to have been done was to cite the defendant Stubenhaus to appear, and because he failed to do so, not only was his position filled, but an election of all other officers was held, although it was not even pretended that any complaints, to say nothing of formal charges, had

been made against the latter. While, by the implication of ordering a new election, the removal of the officers was intended, the minutes fail to show that any direct action to that effect was taken. I do not think that upon a mere notification to the defendant Stubenhaus to appear at the special meeting, without disclosing the purpose for which his appearance was sought, his removal was warranted, even if such meeting had been regularly called and all the members had been notified to attend it, which, as seen, was not the case. My conclusion, therefore, is that neither of the claimants to the office of president was elected as claimed by them.

[9] In this view the defendant Stubenhaus and others holding office on January 16, 1909, when an election should have been held, continue in office until their successors are lawfully elected and qualified. 34 Cyc. 1132; Niblack on Benefit Societies (2d Ed.) 189, 190. It should be noted that both factions passed resolutions purporting to continue in office their respective officers until the determination of this action.

[10] The amended complaint is sufficiently broad in its allegations to state a right of action against the defendant Stubenhaus upon the theory that he is the de facto president of the congregation, even though the plaintiff failed to allege and prove that he was the president of the congregation when the action was commenced. In Rourke v. Elk Drug Co., 75 App. Div. 145, 77 N. Y. Supp. 373, it was held that an action, based upon a conspiracy committed by all the members of an unincorporated association acting through the associates, may, under the provisions of section 1919 of the Code of Civil Procedure, be maintained against the president or treasurer of the association. Applying the rule laid down in that case, any of the forms of relief sought may be had in this action, provided the proofs warrant the granting of the same.

Taking up, then, the consideration of the evidence relating to the various controverted allegations of the complaint in the order in which they are stated, I find that the plaintiff is not, as claimed, the duly elected president of the congregation; that the defendant Stubenhaus and his associates continued in office in spite of the fact that no resolution to that effect was offered or adopted; and that the defendants did not conspire to acquire and appropriate to their own use the property of the congregation. The minutes of the meeting of January 30, 1909, state that "a resolution was passed by all the members that the cemetery plot and all other property which this society possessed should be sold." As the passage of such resolution is disputed by the plaintiff and his faction, the defendants should be restrained from selling and disposing of such property until the views of the members relating thereto can be ascertained at a meeting, regular or special, upon due notice to all the members, which notice should state the objects of the meeting. As to the removal of the religious articles above mentioned by the defendant Stubenhaus to his apartments, I am satisfied that they were removed in good faith, after conferring with members of his faction, with a view of saving the expense of storing them after the expiration of the lease of the hall in which the congregation

worshiped. The defendant Stubenhaus sold a lot in the congregation cemetery plot to a person other than a member. While justification for such course may be found in the resolutions of January 30th, the further sale of burial lots, except to members, should be discontinued until the further order of the court.

It results from the foregoing views that the plaintiff is entitled to judgment restraining the defendants from selling or disposing of any of the property of the congregation, including the cemetery plot. All de facto officers, as well as all others claiming office by virtue of the alleged election of February 3, 1909, having in their possession any moneys, or minute books, or books of account, or any property of the congregation, will also be restrained from paying out or disposing of the same until officers of the congregation are regularly elected and have qualified and can take possession of such property. No costs will be awarded. Let requests for findings in accordance with the views above expressed be submitted, with proof of service.