Matter of the Application of Isabel W. G. Reed for an
   Order Directing the Issuance of a Writ of Manda-
   mus against the National Order of the Daughters
   of Isabella, and others constituting its Officers and
   National Board of Directors.

(Supreme Court, Oneida Special Term, June, 1916.)

Associations — mandamus — when expulsion from fraternal association
   illegal — absence of trustee from meeting — power to declare office
   vacant.

   Where on a motion for a peremptory writ of mandamus
directing that the " National Order of the Daughters of Isa-
bella," a domestic membership corporation, its officers and
directors convene and reinstate petitioner as a member of a
subordinate court of the order, no answer in the form of a
pleading has been served, whether there is anything more than
a question of law involved is to be determined from the mov-
ing papers, the uncontradicted allegations of the petition and
the statement of facts in an affidavit submitted by the national
advocate being taken as true.

   While petitioner, who had been for twelve years a member
in good standing in a subordinate court of the " National Order
of the Daughters of Isabella," was grand regent the supreme
regent of the national order preferred two specific charges
against her as follows:

   1. The act of the subordinate court in removing one K., as
trustee, and electing a successor to her and in continuing to
recognize and sustain such successor after notice from the na-
tional board of directors that an appeal taken by K. had been
sustained by that body.

   2. The action of said subordinate court in directing its treas-
urer to refuse to comply with the request of the state regent
to send its books, warrants and vouchers to a distant part of
the state for examination.

   Involved in the charges was the part petitioner as grand
regent took to bring about and sustain the doings of her court
in that regard and she was charged with wilful insubordination
and a contempt of the superior authority of the national board

of directors in connection therewith. On a trial of the charges before ten members of the national board of directors and officers of the national order, five of said members voted to sustain the charges and expel petitioner from the order, two in the negative and three not voting. On motion for a peremptory writ of mandamus to compel her reinstatement as a member of the subordinate court, held, that as under section 108 of the constitution, laws and rules of the order the five members of the trial body had no power under the facts and law to deprive petitioner of her membership in the order and take from her property rights which she owned therein, there being a mortuary fund connected with the order, her expulsion was illegal.

The fact that K., while a trustee, was absent from six successive regular meetings and that the subordinate court had power to declare her office forfeited, in the absence of an explanation or excuse on her part, and the action of said court in selecting a successor to her to fill the office of trustee deemed vacant did not furnish sufficient grounds for the expulsion of petitioner, especially as she neither acted nor voted on that question except as she presided as grand regent at the meeting at which K.'s successor was elected and subsequently recognized such action as legal.

That the subordinate court when it declared K.'s office forfeited acted within the scope of section 102 of the laws and rules of the national order which provides that, "Any officer of a subordinate court absenting herself for three regular meetings in succession, unless excused by a majority vote of her court, shall forfeit her office," and that petitioner could control the vote upon such question, could not be successfully urged.

Granting that upon a claim of the national body that it had always held that the only remedy which a local court had under section 102 of the laws of the order was to certify and declare that any officer named had been absent from three successive meetings and to ask the national order to declare the office vacant and that the appeal of K. was the first on just that point to come before said board of directors and that it had never accepted or sustained or maintained the right or authority in any local court to remove any member from office or expel any member for any cause whatever except for nonpayment of dues, the matter was within the jurisdiction of the national body, yet without a positive rule of action to guide the subordinate court

its members might well understand conscientiously that the power was vested in them to declare an office vacant, especially in the circumstances of the instant case.

That there being no authority in the constitution, laws or rules of the national body or subordinate court to remove the books and records of the local court to a distant part of the state, nothing more than a full right of examination being given to the superior body, the petitioner as grand regent could not be said to have the power to control the action of the local court having a membership of nearly 400, she not being responsible so far as the records disclose for the action of the court; if there had been a violation of the constitution, laws and rules of the national order it was not the action of the petitioner but that of the local court.

Motion for a peremptory writ of mandamus.

Warnick J. Kernan and Daniel E. Meegan, for petitioner.

Russell H. Brennan, for defendants O'Donnell, Henry and Wankel.

P. H. Fitzgerald, for National Order of the Daughters of Isabella, and others.

Devendorf, J. Motion by Isabel W. G. Reed for an order directing that a peremptory writ of mandamus issue against the National Order of the Daughters of Isabella and its national officers and board of directors, commanding them to convene and reinstate her as a member of Court Utica No. 1 of the Daughters of Isabella, or, if the applicant's right to mandamus does not depend upon questions of law only, then that an alternative writ issue. No answer in the form of a pleading has been served and whether there is anything more than a question of law involved is to be determined from the petitioner's moving papers and the affidavit submitted by the national advocate, Mr.

Supreme Court, June, 1916. [Vol. 95.

Fitzgerald. The uncontroverted allegations of the petition and the statement of facts in such affidavit are to be deemed true. *People ex rel. Croft* v. *Keating,* 49 App. Div. 123; *People ex rel. Corrigan* v. *Mayor,* 149 N. Y. 215.

Considering the facts as disclosed by the papers and records, according to the rule above announced, I am of the opinion that this is not a case for an alternative writ of mandamus. If this is correct then questions of law only arising upon the undisputed facts are involved in this controversy, viz: whether petitioner is entitled to a peremptory writ or not. There is a question whether the affidavit of the supreme regent (Mrs. Walsh) and the national secretary (Mr. Kelly) may be regarded as the allegations of the defendant, the National Order of the Daughters of Isabella, but as it is presented by the national advocate of said order I give it the benefit of the doubt and shall deem it a truthful statement of the facts, not, however, considering the conclusions and opinions contained therein as allegations of fact. They must be disregarded. *Matter of Pierce, Butler & Pierce Mfg. Co.,* 62 Hun, 265; *People ex rel. Rau* v. *York,* 31 App. Div. 527.

March 29, 1916, Miss Reed, the petitioner, was the grand regent of said Court Utica No. 1 of the Daughters of Isabella and had been a member in good standing therein for more than twelve years, it being a subordinate court of the national order of the Daughters of Isabella, which is a membership corporation organized and incorporated under the laws of the state of New York, having its principal office at Utica, N. Y., and its principles are to promote the social and intellectual standing of its members, literary purposes and the rendering of such aid and assistance among its members as shall be desirable and proper, and by such lawful means as shall seem best.

On the 20th day of March, 1916, the supreme regent of the national order preferred charges against Miss Reed and subsequently a trial thereof was had before ten members of the national board of directors and officers of said national order, which resulted in five members of such trial body voting to sustain the charges and expel her from the order, two in the negative and three not voting. The charges preferred were somewhat general in form but finally resulted in two definite accusations, viz: (1) the action of Court Utica No. 1 in removing Catherine N. Kelly as trustee and electing a successor to her, and in continuing to recognize and sustain such successor after notice from the national board of directors that the appeal of said Catherine N. Kelly had been sustained by that body, (2) the proceeding of said court in directing its treasurer to refuse to comply with the request of Katherine M. Rosney, state regent, to send its books, warrants and vouchers to Poughkeepsie, N. Y., for examination.

Involved in these two specific charges is the part Miss Reed, as grand regent, took to bring about and sustain the doings of her court in that regard, and she is charged with wilful insubordination and a contempt of the superior authority of the national board of directors in connection therewith. She claims such expulsion was illegal. That five members of such tribunal had no power under the facts and law to deprive her of a membership in this organization and take from her the property rights which she owned therein, a mortuary fund being connected with the order. See Constitution, Laws and Rules, § 108.

The material facts are not in dispute, as stated, and there should be either a peremptory writ of madamus or a dismissal of the petition. There are several reasons why I think the petition should be sustained and a peremptory writ granted. In the first place it

appears without dispute that Mrs. Kelly, holding a position as trustee, was absent from six successive regular meetings and that the court had power to declare her office forfeited in the absence of an explanation or excuse on her part. At least, it is sufficiently debatable that bad faith could not be imputed to a member or officer taking part in declaring such forfeiture. Her office being deemed vacant, the act of selecting Miss Brazill to fill the vacancy does not furnish sufficient grounds for the harsh remedy of expulsion, especially so when we consider that the petitioner neither acted nor voted upon that question, excepting as she presided as grand regent at the meeting and subsequently recognized the action as valid.

That she could control the vote of the court upon such a question cannot be successfully urged. That Court Utica No. 1 acted within the scope of the laws and rules of the national order (§ 102), which provides that " any officer of a subordinate court absenting herself for three regular meetings in succession, unless excused by a majority vote of her court, shall forfeit her office," when it declared Mrs. Kelly's office forfeited appears reasonable, particularly so when she had been absent for six regular business meetings in succession and refused to present an excuse when given an opportunity. The majority vote of her court had the power to excuse the forfeiture; hence power may be inferred to declare it.

The national board by the affidavit filed herein takes the position that " the national body has always held that the only remedy which a local court had under section 102 of the laws of the order was to certify and declare the fact that any officer named had been absent from three successive meetings and to ask the national body to declare the office vacant, and the appeal of said Catherine H. Kelly was the first appeal on just

that point to come before said board of directors, and said board of directors have never accepted or sustained or maintained the right or authority in any local court to remove any member from office or expel any member for any cause whatever, except for non-payment of dues." Granting that position to be correct, that it was a matter within the jurisdiction of the national body, yet, without a positive rule of action to guide the subordinate body, its members might well understand conscientiously that the power was vested in them to declare an office vacant, especially where there had been six successive unexcused absences and a subsequent refusal to explain them.

In *Brendon* v. *Worley,* 8 Misc. Rep. 253, it was held: "Where there is no ambiguity in the by-laws of an association, but their meaning is clear and precise, opinions of superior officers of the order with which it is connected as to their meaning are inadmissible." The opinion of the superior officers in the case at bar cannot control in the matters under consideration. Assuming that they are right in their conclusion that it was a matter for the national body to determine, that certainly does not give the power to expel a member in good standing for taking part in or sustaining the vote of the subordinate order, especially when there are not only personal but property rights and pecuniary interests concerned. *Rudolph* v. *Southern Beneficial League,* 23 Abb. N. C. 199.

Assuming all the facts claimed on the part of the national advocate to be established, and inferences to be drawn therefrom, together with the uncontroverted allegations of the petition, affidavits and records submitted in reference to the charge as to the forfeiture of Mrs. Kelly's office, and the subsequent proceedings in regard thereto, no sufficient or legal reason is established thereby to justify Miss Reed's expulsion.

Upon the other question as to the action of said court, and Miss Reed's participation therein, in directing its treasurer to refuse to comply with the request of state regent Rosney to send the books, warrants and vouchers to Poughkeepsie, there is but little to be said because clearly the records of the court (subject to proper examination by the national body) are under the jurisdiction of the members of such court. I find no authority in the constitution, laws or rules of the national or subordinate courts, and none has been pointed out to me, to remove the books and records of the court to a distant part of the state — full right of examination on the part of the superior body is given, nothing more.

This court has a membership of nearly 400 and Miss Reed as grand regent thereof cannot be said to have the power to arbitrarily control the action of that number of individuals; she was not responsible, so far as the records disclose, for the act of the court. Whether its determination was right or wrong it is not necessary to discuss here; upon Mrs. Manion's resolution the vote to withhold the books from transportation to Poughkeepsie was 190 to 9.

It may be said, however, that the language of subdivision 2 of section 51 of the laws and rules of the national order defines the power of the district or territorial deputies, and which under subdivision 3 of section 50 is likewise made the power of a state regent. It is simply enacted that they shall '' inspect the books, vouchers and accounts of courts within the district and may at any time demand them for examination.'' It does not provide, as does subdivision 2 of section 38 which defines the duty of the committee on finances and audit, that they '' shall be entitled to the possession thereof and all officers shall deliver the same to them.''

It will be observed by the above that the state regent

is empowered to inspect the books and may demand them for examination. It does not provide that the grand regent of the subordinate court shall assume the hazard, risk or duty, if you choose, to forward such books or records to another part of the state. It is very probable that this could have been done and without serious chance but a failure or refusal to do so by the subordinate court does not in my opinion penalize the grand regent to the extent of expelling her from her court and depriving her of rights of membership and property therein. A contrary construction of the laws and rules of the order would be a harsh, unreasonable and unwarranted one.

Therefore, assuming to the petitioner the fullest power within the possible latitude of the language of of the laws and rules of the organization, I unhesitatingly reached the conclusion that there has been no act, affirmatively or of omission, on her part which authorized the supreme body to deprive her of her rights of membership. If there has been a violation of the constitution, laws and rules of the national order, it is not the action of the petitioner but the action of Court Utica, made up of the large membership above mentioned.

The petitioner was entitled to a fair trial before an impartial tribunal and if the method was not regulated by the laws of the association it should be analogous to ordinary judicial proceedings, so far, at least, as to permit substantial justice. *Wachtel* v. *Noah W. & O. Ben. Soc.,* 84 N. Y. 28.

Where such serious results as expulsion from membership follow, those who allege irregularity, in the procedure to expel, must be held to strict proof, for no presumption will be indulged to support a forfeiture, which the law abhors. *People* v. *Medical Society,* 32 N. Y. 193.

Supreme Court, June, 1916. [Vol. 95.

It has been held that refusal of a treasurer in Journeyman Stone Cutters Association to surrender his books and papers to a special committee appointed to investigate a certain bill or account, when by the by-laws he was only required to surrender his books and papers to the trustees to be audited, or to be delivered to his successor, was not sufficient ground for suspension of membership. *Connell* v. *Stalker,* 21 Misc. Rep. 609. The presumption is against the power to expel because it is in the nature of a forfeiture, which, as stated above, the law does not favor. *White* v. *Brownell,* 4 Abb. Pr. (N. S.) 162.

I am aware of the fact that it is not proper for the court here to consider the weight of the evidence and to substitute its judgment thereon for the judgment of the national body, but if their determination of the petitioner's guilt of the charges is unsustained by any substantial evidence such determination should here be considered as contrary to law and natural justice and so subject to review and correction. *Fritz* v. *Knaub,* 57 Misc. Rep. 411, and cases cited.

There is a further question upon which I think something may properly be said, and that is, that the vote of expulsion was not by a majority of the national directors and officers present at the trial. The trial board consisted of ten members (as stated heretofore), three of whom did not vote; five voted for expulsion and two were opposed. To permit petitioner to be deprived of membership and property rights by the vote not of a majority of those hearing the charges, but by a majority of those voting on the charges is to sanction and judicially approve a method of trial in the membership corporation which is contrary to law.

There is nothing (as I understand it) in the laws and rules of the national order designating the number of the national board of directors to carry a vote of

expulsion — therefore, the majority rule should prevail — there should be at least a quorum and the affirmative vote should be by a majority of those present and participating in the trial. Section 34 of the General Corporation Law (Laws of 1909, chap. 28) provides that the affairs of every corporation shall be managed by its board of directors — unless otherwise provided, a majority thereof at a meeting duly assembled shall be necessary to constitute a quorum for the transaction of business and the act of a majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors. In the absence of a definite rule in the laws of the national organization for such a trial, and as to the necessary number of the national board to announce a valid result, the statutory provisions above stated should control. A quorum should be a majority of all the directors and the act of a majority of those present shall be the act of the board, not a majority of the members voting.

Where a corporation is authorized to take any action by the agreement or action of its directors, managers or trustees, it may be taken by such directors regularly convened as a board and acting by a majority of a quorum, except when otherwise expressly required by law or by the laws of the corporation. Gen. Corp. Law, § 43.

The argument of the national advocate as to the Membership Corporations Law, and its force and effect on the questions at bar, has not been overlooked but I think there is nothing in that law which is controlling herein as against the provisions referred to of the General Corporation Law, but, on the contrary, there is language therein which sustains the contention that the act of expulsion should be by a majority vote of the members of the trial body.

45

At the close of the trial Mrs. O'Donnell, one of the national directors, made the pertinent suggestion whether it had been clearly brought out that it was not Miss Reed who elected the new trustee in place of Mrs. Kelly — that it was not Miss Reed who refused to send the books to the state regent, but it was Court Utica No. 1. I agree with the evident force of those suggestions. The minutes of the court show its affirmative action in each of the two material matters charged against Miss Reed. The proof does not establish the allegations against her and the record is without facts to sustain the expulsion; she had social membership and property rights which could not be taken from her by the national body. The conceded facts and undisputed records do not confer the necessary legal power upon it to do that. There was also a failure of a majority vote of the directors and officers at the trial. Peremptory writ of mandamus granted, with costs.

Motion granted, with costs.